**William Mark WESTMORELAND, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 12–03–00224–CR.**

Court of Appeals of Texas, Tyler.

May 25, 2005.

Discretionary Review Refused Sept. 28, 2005.

Douglas Scott Williams, Athens, for appellant.

Donna R. Bennett, Athens, Shari Moore, for state.

Panel consisted of WORTHEN, C.J., GRIFFITH, J., and DeVASTO, J.

## OPINION

SAM GRIFFITH, Justice.

Appellant William Mark Westmoreland was convicted by a jury of murder. The jury assessed his punishment at imprisonment for forty-five years and a ten thousand dollar fine. He raises three issues on appeal. We affirm.

### BACKGROUND

Appellant and his wife, Debra (now Debra Westmoreland Pierce), separated on December 6, 2000. Debra moved from their home, assisted by the decedent, Kenneth Zoch. Appellant was to be away from the house during the move, but came home

early. Words were exchanged, and Appellant shot Zoch twice, killing him.

On February 14, 2003, more than two months before trial, the State filed a motion to amend Appellant's indictment. Appellant did not object to the amendment. The court entered a written order amending the indictment, but the changes were never interlineated on the indictment.

Prior to trial, Appellant filed a motion in limine to exclude certain extraneous conduct. The trial court granted the motion. However, during the trial, two State's witnesses violated the motion in limine by mentioning two extraneous offenses alleged to have been committed by Appellant. Appellant objected to the admission of the testimony.

After the trial, it was determined that a juror who sat on the case was not the same "Robert Bruce Bankhead" who had been summoned. At the hearing on Appellant's motion for new trial, Appellant developed testimony that the wrong Robert Bankhead had served on the jury. Rather, the Robert Bankhead who sat as a juror was the father of the summoned person, Robert Bankhead, III.

The jury convicted Appellant of murder, sentenced him to imprisonment for forty-five years, and assessed a fine of ten thousand dollars.

### AMENDMENT OF INDICTMENT

In his first issue, Appellant contends the trial court erred in denying Appellant's motion for continuance and proceeding to trial on the "amended" indictment because the amendment was not effective.

*Relevant Facts*

Appellant was indicted for the murder of Kenneth "Zock" by shooting him in the chest. On February 14, 2003, the State filed a motion to amend the indictment. The State requested several alterations of the indictment, including a change in the victim's name from "Zock" to "Zoch" and a change in the manner of committing the act of murder from "shooting Kenneth Zock in the chest" to "shooting Kenneth Zoch in the buttocks and in the arm and through the chest." Appellant did not object to the amendment, and the court signed an order granting the motion.

On April 28, 2003, during the jury selection process, the court recounted the facts of the February 14 hearing.[1] The court noted that Appellant and his attorneys were present at the hearing on the State's motion to amend the indictment and that Appellant did not object to the State's motion. The court also noted that it had granted the motion and signed an order reflecting its ruling. The trial court acknowledged that it did not personally interlineate the changes on the original indictment; rather, the court stated that it most likely instructed the court clerk to do so. The clerk did not make the changes on the original indictment.

Appellant objected that the amendment was not effective because the changes had not been made on the original indictment and the order granting the State's motion to amend the indictment was insufficient to amend the indictment. The court noted that at the hearing on the motion, which occurred on February 14, 2003, Appellant was given notice of the order granting the State's motion and made no objection to

---

1. The transcription of the February 14, 2003 hearing was not brought up on appeal. Both parties seem to agree that the judge correctly recited the events that occurred at the hearing. Although lack of a record may be otherwise fatal to an issue, and the better practice is to provide the reporter's record, the record here is sufficient to address the issue framed by Appellant. *See* TEX.R.APP. P. 34.6(c).

the order. Appellant then contended that he had not been actually served with the order on the motion to amend. Appellant claimed that he was entitled to two days notice of the amendment according to Texas Code of Criminal Procedure, article 26.03. *See* TEX.CODE CRIM. PROC. ANN. art. 26.03 (Vernon 1989). The court responded that Appellant had been given a copy of the order on February 14, 2003 and proceeded to arraign Appellant on the amended indictment. When the court asked for announcements, Appellant announced not ready on the amended indictment, due to the objections previously stated, but announced ready on the original indictment. The court overruled Appellant's announcement. Appellant filed a verified motion for continuance, which the trial court overruled.

### Applicable Law

■ A criminal defendant is guaranteed the right to know the allegations against him contained in an indictment returned by a grand jury and to have a copy of the indictment. TEX. CONST. art. I, § 10. An indictment vests the trial court with jurisdiction and provides the defendant with notice of the offense with which he is charged so that he may prepare, in advance of trial, an informed and effective defense. *Riney v. State*, 28 S.W.3d 561, 565 (Tex.Crim.App.2000).

■ Texas Code of Criminal Procedure, article 28.10 prescribes the following procedure for amending an indictment:

(a) After notice to the defendant, a matter of form or substance in an indictment or information may be amended at any time before the date of the trial on the merits commences. On the request of the defendant, the court shall allow the defendant not less than 10 days, or a shorter period if requested by the defendant, to respond to the amended indictment or information.

. . . .

(c) An indictment or information may not be amended over the defendant's objection as to form or substance if the amended indictment or information charges the defendant with an additional or different offense or if the substantial rights of the defendant are prejudiced.

TEX.CODE CRIM. PROC. ANN. art. 28.10(a), (c) (Vernon 1989). All amendments of an indictment or information must be made with leave of the court and under its direction. *Id.* art. 28.11.

Prior to 2000, the recognized procedure for amending an indictment required the State to either return to the grand jury to obtain a subsequent indictment or request an amendment of the indictment through a motion to the court. The motion to amend the indictment, taken together with the trial court's granting of the motion to amend and signing the order on the amendment, comprised the authorization for the eventual amendment of the charging instrument pursuant to article 28.10. *Ward v. State*, 829 S.W.2d 787, 793 (Tex. Crim.App.1992). The *Ward* court noted that "amend" means an actual alteration of the charging instrument itself. *Id.* The amendment, then, was the actual alteration of the charging instrument. *Id.* Consequently, where the State moved to amend the indictment and the trial court granted the motion, the court physically interlineated the changes on the original indictment. *See id.* at 793–94. Appellant relies on *Ward* to support his argument that written alteration of the indictment was necessary in the case at bar to make the amendment effective.

In 2000, the court of criminal appeals addressed whether it was necessary to physically interlineate the changes in order to amend an indictment. *See Riney,* 28 S.W.3d at 564. In *Riney,* the court

overruled *Ward* and the cases relying on it, to the extent they required physical interlineation of the original indictment as the only means to amend an indictment. *See id.* at 566. The court emphasized that the amended indictment was where the defendant could find notice of the specific charges against him in order to prepare his defense. *Id.* Therefore, the court held, the "physical interlineation of the original indictment is an acceptable but not the exclusive means" of amending an indictment. *Id.* at 565–66. Based upon the holding in *Riney*, at least one court has held that a written order granting the State's motion to amend, in which the language of the original indictment with the amendment is reproduced, constitutes an effective amendment. *See Aguilera v. State*, 75 S.W.3d 60, 64 (Tex.App.-San Antonio 2002, pet. ref'd).

### *Application*

 In the present case, the State filed a motion to amend the indictment, which contained both the language of the original indictment and the amending language it requested. Appellant was present at the February 14, 2003 hearing, had notice of the intended amendment, and had no objection to the amendment. The order granting the motion included the language of the original indictment, amended as requested in the State's motion. Consequently, we hold that the order was sufficient to amend the indictment and to put Appellant on notice of the amended language in the indictment. *See Riney*, 28 S.W.3d at 565–66; *Aguilera*, 75 S.W.3d at 64. Because the amendment of the indictment was effective, the trial court did not err in denying Appellant's motion for continuance and proceeding to trial on the amended indictment. We overrule Appellant's first issue.

### MOTION FOR NEW TRIAL

In his second issue, Appellant contends that the trial court erred in failing to grant a new trial after Appellant had established at the hearing on the motion for new trial that the wrong "Robert Bankhead" had served as a juror.

### *Relevant Facts*

At the hearing on Appellant's motion for new trial, the trial court determined that the person who had actually been summoned for the jury panel was Robert Bankhead, III, who was born on May 24, 1981, and had shown as his mailing address his father's residence. His father, Robert Bankhead, Jr., was born May 21, 1956. Due to a lack of space, the jury summons did not include Robert Bankhead's entire name, nor did it include whether the summoned person was "Jr." or "III." The father, Robert Bankhead, Jr., responded to the jury summons, was petit juror number thirty-six, and was seated as the twelfth juror on the panel. Robert Bankhead, Jr. testified on direct examination at the hearing on the motion for new trial that his son's "permanent address" was the same as his own address. On cross-examination by the State, Bankhead testified that his son did not actually reside in Athens, but was "living" in Denton. Robert Bankhead, III did not appear at the hearing and, therefore, did not testify to clarify this inconsistency.

The strike list included petit juror number thirty-eight. Brian Lookabaugh, juror number forty, was chosen as the alternate juror. At the hearing on the motion for new trial, Appellant offered, and the court accepted, an affidavit from Lookabaugh, who as the alternate juror had listened to all the testimony adduced at trial. Lookabaugh, in his affidavit, stated that he would have voted for a verdict of not guilty. Lookabaugh did not attend the

hearing and was, therefore, unavailable for cross-examination.

### Analysis

■ Appellant advances one case, *Gerhardt v. State*, 935 S.W.2d 192 (Tex. App.-Beaumont 1996, no pet.), that addresses this unusual situation of a similarly-named, unsummoned person sitting as a juror in a trial. Appellant forthrightly admits that *Gerhardt* was decided contrary to his position, but contends the present case is distinguishable because he, unlike the appellant in *Gerhardt*, has shown injury.

In *Gerhardt*, "Thomas Norman Terry," who was born in July of 1962, was summoned as a potential juror. *Id.* at 192. "Terry Norman Thomas," who was born in 1937 or 1938, came to court and was impaneled on Gerhardt's jury. During the trial, the bailiff advised the court that the person seated on the jury was not the person summoned. The trial court informed the parties. The trial court observed that the person seated on the jury was qualified and the only issue was his not being one of the persons summoned. The State argued that the trial should continue with the empaneled juror, but Gerhardt moved for a mistrial. The trial court denied Gerhardt's motion and proceeded with the trial. *Id.*

In addressing the issue, the Beaumont court noted that the relevant provisions of the Texas Code of Criminal Procedure speak in terms of persons or jurors "summoned." However, the court recognized that the court of criminal appeals has repeatedly held that " 'noncompliance with the mode and manner of service or summoning the venire constitutes error only when injury has been shown.' " *Id.* (citing *Lawton v. State*, 913 S.W.2d 542, 554 (Tex.

Crim.App.1995) (citations omitted)). The court noted that neither party disputed the trial court's statement that the juror was not disqualified. Because Gerhardt had shown no injury or harm, the court held that the trial court did not err in proceeding with the seated juror. *Id.*

Appellant contends that he was injured because Lookabaugh, the alternate juror, would have served on the jury if Mr. Bankhead had not been selected. In support of his contention, Appellant offered, and the court accepted into the record over the State's objection, an affidavit from juror Lookabaugh, who sat as the alternate juror. Lookabaugh's affidavit included the conclusion that "[i]f Mr. Bankhead had not been selected then I would have been the 12th person selected and continued to serve as a juror in the case through deliberations." Lookabaugh swore that he would have voted "not guilty."

In offering Lookabaugh's affidavit, Appellant endeavored, as diligently and artfully as possible, to establish the injury of having the wrong "Robert Bankhead" seated on the jury. However, there are several suppositions contained in the affidavit's assertions that do not bear up under strict analysis. The first supposition is that Robert Bankhead, III was disqualified to serve because, as his father testified, he "lived in Denton." However, we note that although Mr. Bankhead testified that his son did not actually reside in Athens, he also testified that his son's "permanent address" was the same as his own. This testimony falls short of establishing that Robert Bankhead, III was not a resident of Henderson County for purposes of jury duty.[2]

---

**2.** A challenge for cause may be made by either the State or the defense if a potential juror is not a qualified voter in the state and

county under the Constitution and laws of the state. TEX.CODE CRIM. PROC. ANN. art. 35.16 (Vernon 1989). Section 1.015(a) of the Elec-

The second supposition is that juror Lookabaugh would have been selected as a juror if Robert Bankhead, Jr. had not appeared for jury duty. In reviewing the record, we note that two qualified venire persons were seated between Robert Bankhead, Jr., Juror 36, and Brian Lookabaugh, Juror 40, during voir dire. Neither the State nor Appellant adduced evidence to show why those two individuals, Steven Powell, Juror 37, and Delia Mathis, Juror 38, were not selected as jurors. Moreover, we may only speculate as to how the parties would have utilized their jury strikes had neither of the two Robert Bankheads appeared for jury duty or how the strikes would have been utilized had Robert Bankhead, III appeared, even if he was not disqualified from serving on the jury. Finally, we can only speculate whether, if Robert Bankhead, Jr. had not appeared and Lookabaugh had been within the "strike zone" for jurors, the State or Appellant would have looked more favorably upon Mr. Powell or Ms. Mathis as alternatives to Mr. Lookabaugh. We decline to engage in such speculation.

Finally, juror Lookabaugh asserted that he found the State's evidence at trial insufficient to convict Appellant and stated unequivocally that he would have voted for a verdict of not guilty. With absolute confidence, he swore that, despite whatever might have been said in the jury room, and regardless of the perceptions and comments of the other jurors during deliberations, he would have voted not guilty. However, during jury deliberations, jurors exchange observations and perceptions of the witnesses and the testimony, and those exchanges can illuminate or emphasize testimony that one juror may not have noticed or appreciated during the trial.

Without Lookabaugh having been privy to the discussions and observations of the jury's deliberations, such a firm assertion is not persuasive.

It should also be noted that the jury list was available before the trial date and was given to counsel for both parties prior to jury selection. *See* TEX.CODE CRIM. PROC. ANN. art. 35.11 (Vernon Supp.2004–2005). The jury list contained Robert Bankhead, III's date of birth, which indicated that the summoned Robert Bankhead was 21 years of age. The person sitting in the jury pool responding to questions was almost fifty. The District Clerk, the court, and the parties had the information that would have revealed which Robert Bankhead was summoned. If anyone had compared their lists with the potential jurors sitting before them, they could have ascertained that Robert Bankhead, Jr. was not the summoned person. This Appellant failed to do, to the detriment of his second issue.

The time to object to the improperly summoned juror was before the case was tried. *See Howard v. State*, 72 Tex.Crim. 624, 627, 163 S.W. 429, 431 (1914) ("It is too late, after the trial, for the first time to raise any such question" regarding improperly summoned jurors.). Without a timely objection to an improperly summoned juror, Appellant has waived the issue. Furthermore, Robert Bankhead, Jr. was not disqualified to serve as a juror. Although he was not the "Robert Bankhead" who had been summoned for Appellant's case, Appellant failed to establish that he was injured by seating Robert Bankhead, Jr. We overrule Appellant's second issue.

### FAILURE TO GRANT MISTRIAL

In his third and final issue, Appellant contends the trial court erred in failing to

tion Code defines "residence" as "domicile, that is, one's home and fixed place of habitation to which one intends to return after any temporary absence." *See* TEX. ELEC.CODE § 1.015(a) (Vernon 2003).

grant a mistrial after two witnesses violated Appellant's motion in limine. The defense motion sought to restrain the State or its witnesses from making reference to extraneous offenses and misconduct evidence regarding Appellant. The trial court summarily granted the defense motion, as well as a motion in limine filed by the State, after the parties agreed to approach the bench for a ruling on the admissibility of the evidence.

### Standard of Review

Whether the trial court erred in denying a motion for mistrial is reviewed under an abuse of discretion standard. *Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim.App.1999). A trial court does not abuse its discretion when its decision is within the zone of reasonable disagreement. *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex.Crim.App.1990) (op. on reh'g).

The granting of a mistrial is an extreme remedy for curing prejudice occurring during a trial. *Bauder v. State*, 921 S.W.2d 696, 698 (Tex.Crim.App.1996). A mistrial is required only when the improper evidence or testimony is "clearly calculated to inflame the minds of the jury and is of such a character as to suggest the impossibility of withdrawing the impression produced on the minds of the jury." *Hinojosa v. State*, 4 S.W.3d 240, 253 (Tex. Crim.App.1999) (citations omitted). Ordinarily, a prompt instruction to disregard will cure any prejudicial effect associated with an improper question and answer, even one regarding extraneous offenses. *Ovalle v. State*, 13 S.W.3d 774, 783 (Tex. Crim.App.2000). A reviewing court looks to the facts of each case to determine whether a curative instruction is sufficient to cure prejudice from an improper question or answer. *Hernandez v. State*, 805 S.W.2d 409, 414 (Tex.Crim.App.1990). A reviewing court will presume the jury will follow the trial court's instructions to disregard improper testimony. *Colburn v. State*, 966 S.W.2d 511, 520 (Tex.Crim.App. 1998).

### Applicable Law

A motion in limine may be used to request that the State not be permitted to mention any evidence of prior convictions to the jury until a hearing has been held outside the presence of the jury to determine the admissibility of the evidence. *Geuder v. State*, 115 S.W.3d 11, 14 (Tex.Crim.App.2003). However, a motion in limine is a preliminary ruling, and violation of a granted motion in limine will generally not preserve error on appeal. *Id.* at 15. Once a motion in limine has been violated, counsel must obtain an adverse ruling to preserve the complaint. *Id.* at 14–15.

To preserve error regarding the admission of evidence in violation of a motion in limine, an objection should be made at the time the evidence is offered. *Brazzell v. State*, 481 S.W.2d 130, 131 (Tex. Crim.App.1972); *see also* TEX.R.APP. P. 33.1(a). If the court sustains the objection, the objecting party must then ask the court to instruct the jury to disregard the testimony. If the court instructs the jury to disregard the testimony, the party must then move for a mistrial. *See Koller v. State*, 518 S.W.2d 373, 375 n. 2 (Tex.Crim. App.1975). The party objecting to the testimony must obtain an adverse ruling from the court; otherwise, he has received all the relief he has requested. *See Adams v. State*, 685 S.W.2d 661, 670 (Tex.Crim.App. 1985).

### Analysis

Appellant notes two instances where extraneous offense evidence was adduced in violation of the motion in limine. In the

first situation, Appellant's counsel asked an investigating officer how she had investigated a threat by the decedent against Appellant. The officer responded that "at one time after Debra [Appellant's ex-wife] had supposedly been beat by her husband [Appellant], Kenneth Zoch [the decedent] supposedly called [Appellant] and made a conditional threat to him." After Appellant objected, the State's counsel informed the trial court that she had not told the officer about the agreement not to mention Appellant's prior acts. The trial court overruled Appellant's objection to the testimony.

■ Later in the trial, Debra gave the same testimony without objection. Adducing the same evidence without objection cures any error committed by the prior admission of the same evidence. *Lane v. State*, 151 S.W.3d 188, 193 (Tex.Crim.App. 2004). Therefore, any error from the statement of the investigating officer regarding Zoch's threat to Appellant is cured. Further, in response to Appellant's objection and motion for mistrial, the trial court offered to instruct the jury to disregard the testimony, but Appellant chose not to seek an instruction to disregard. Thus, the trial court's denial of Appellant's motion for mistrial was not an abuse of discretion.

■ The second instance relates to testimony by Appellant's ex-wife, Debra, that she knew Appellant did not want her to call 9-1-1. She stated, "I thought he was going to shoot me." When asked why she thought that, Debra said, "Because he had put a gun to me before." Appellant objected, and the objection was sustained. At Appellant's request, the trial court instructed the jury to disregard the objectionable testimony.

Appellant did not ask for a mistrial after the trial court gave the instruction to disregard. He therefore received all the re-

lief that he requested, which was a sustained objection to Debra's statement and an instruction to the jury to disregard it. *See Adams*, 685 S.W.2d at 670. We presume the jury followed the court's instruction to disregard. *See Colburn*, 966 S.W.2d at 520. Therefore, Appellant's argument as to Debra's statement is without merit. We overrule Appellant's third issue.

## DISPOSITION

The judgment of the trial court is *affirmed.*