NUMBER 13-05-00643-CR



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG 


 


ELIZABETH REYNOLDS, Appellant,


v.


THE STATE OF TEXAS, Appellee.

 
On appeal from the 105th District Court of Kleberg County, Texas.

 


MEMORANDUM OPINION


Before Chief Justice Valdez and Justices Benavides and Vela


Memorandum Opinion by Chief Justice Valdez



 Appellant, Elizabeth Reynolds, appeals from her conviction of criminal solicitation
of capital murder. Tex. Penal Code Ann. §§ 15.03(a), 19.02(b) (Vernon 2003); §
19.03(a)(3) (Vernon Supp. 2006). A jury found Reynolds guilty and assessed punishment
at life in prison. The trial court entered a judgment of conviction and punishment according
to the jury's verdict. By four issues, Reynolds contends that: (1) she was denied effective
assistance of counsel in two distinct instances; (2) the trial court erred in denying a motion
for mistrial; and (3) the evidence is factually insufficient to support her conviction. We affirm.

I. BACKGROUND

 On the morning of August 9, 2003, Albert Benitez was in his garage apartment with
Reynolds, his girlfriend. Suddenly the couple heard a loud thumping on the door. Benitez
opened the door to encounter a man, later identified as Franciso Perez, pointing a gun at
him and asking if he was Albert. Benitez slammed the door and yelled for Reynolds to call
911.

 At trial, Benitez testified for the State that he held the door closed as Perez rammed
into it for a few minutes. After the ramming ended, Benitez continued to hold the door until
he was shot from behind by Perez. Benitez believed Perez had entered the garage
apartment through Benitez's parents' attached house. Perez shot Benitez two more times
before Benitez ran outside. Benitez ran into an entrance of his parent's adjoining house
to find a phone and call 911. Perez chased Benitez into his parents' house and shot him
for the fourth time in the kitchen. Benitez testified that he ran to the back porch and was
shot a fifth time. After being shot for the fifth time, Benitez lost his balance and fell off the
porch. Perez then shot him a sixth time. Benitez ran to another area outside the house
and saw Perez and Reynolds slowly driving away in Benitez's green Crown Victoria. 

 Benitez called 911, and the police arrived. He told the officers that he had never
seen Perez before, but he was able to give the officers a description. He told them that
Perez had kidnaped his girlfriend and that the two were traveling in Benitez's Crown
Victoria. 

 Later that morning, Reynolds approached Kingsville Police Officer John Greif in the
parking lot of the Kingsville police station. Officer Greif testified for the State that Reynolds
approached him crying, yelling, and claiming she needed help. Reynolds told him her
boyfriend had been shot and that she was abducted at gunpoint by the shooter and forced
to drive to Kingsville. Reynolds also told Officer Greif that the shooter jumped out of the
vehicle on the highway at a speed of between 55 and 70 mph.

 Officer Ted Figueroa participated in the conversation between Reynolds and Officer
Greif. Officer Figueroa testified Reynolds seemed upset but was not crying. He further
testified that she appeared to be shaking, but when asked a question, she would stop and
answer it. When asked to give a description of the shooter, Reynolds told the officers she
did not know what he looked like because he was wearing a ski mask. Officer Figueroa
asked Reynolds if her boyfriend had gotten any help and Reynolds told him that she did
not know; she did not mention placing a 911 call. Officer Figueroa then went to the section
of the highway where Reynolds said the suspect had jumped from the vehicle, but he did
not find any evidence to indicate anyone had jumped from a moving vehicle. 

 Texas Ranger Oscar Rivera questioned Reynolds about the shooting and testified
about her responses. According to Ranger Rivera, Reynolds phoned 911 from Benitez's
parents' kitchen shortly after hearing gunshots. After dialing 911, Reynolds threw the
phone on the kitchen table and ran towards the garage apartment yelling for Benitez. 
Unable to find him, she walked outside and was taken hostage. However, Ranger Rivera
testified that there was no record that Reynolds had ever placed a call to 911 and that even
if she had hung up after placing a call, there would be a call record. Ranger Rivera also
testified about his visit to the crime scene, observations of the bullet holes in the door, and
his conclusion that based on the location of these holes, the shooter had to have been in
the kitchen area of the house. 

 After the shooting and alleged kidnaping, Reynolds was unable to identify Perez in
a line up. On a second occasion, however, when she was shown photographs, she
pointed to Perez's picture and said that he kind of looked like the shooter. 

 Ranger Rivera testified as to certain forensic evidence and business records utilized
in the investigation. He stated that a shirt Reynolds later identified as the one worn by the
shooter was found approximately a half mile off the highway where Reynolds had said that
the shooter had jumped from the vehicle. Ranger Rivera testified that the shirt was not
damaged in any way. He also testified that he pulled Reynolds's cell phone records. 
During the three month time frame from July 2003 to September 2003, Reynolds made
over one hundred phone calls to a number that belonged to Sara Perez. A review of
Reynolds's bank accounts revealed that Reynolds transferred $2,000 to her checking
account on the day of the shooting. The record also contains a $2,000 check dated August
10, 2003, the day after the shooting, written from Reynolds's checking account to
Francisco Perez. 

 The State's final witness was Sara Perez. Ms. Perez testified she was the mother
of Francisco Perez. Ms. Perez said that sometime around August 9, 2003, Reynolds called
her house and asked to speak to Francisco Perez. After Ms. Perez told Reynolds that
Francisco was not there, Ms. Perez testified that Reynolds told her that if a Texas Ranger
came to her house, she should lie and say that she was Reynolds's maid.

 After hearing the testimony and deliberating on the evidence, the jury convicted
Reynolds of criminal solicitation of capital murder. After a sentencing hearing, the jury
sentenced Reynolds to life in prison. The trial court entered a judgment of conviction and
sentenced Reynolds to life in prison pursuant to the jury's verdict. A motion for new trial
was timely filed, but denied by operation of law. (1) This appeal ensued.

II. DISCUSSION

A. Ineffective Assistance of Counsel

 In her first two issues, Reynolds contends that she was denied effective assistance
of counsel. Reynolds's first issue contends that she was denied effective assistance of
counsel because her appellate counsel miscalculated the last date on which the court
could hold a hearing on Reynolds's motion for new trial. Reynolds's second ineffective
assistance of counsel issue contends that trial counsel failed to present a defense to the
charges brought against her.

 1. Standard of Review

 There is a strong presumption that counsel's conduct falls within a wide range of
reasonable professional assistance. Strickland v. Washington, 466 U.S. 668, 689 (1984);
Thompson v. State, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). If "there is at least the
possibility that the conduct could have been legitimate trial strategy," then we must "defer
to counsel's decision and deny relief on an ineffective assistance of counsel claim on direct
appeal." Johnson v. State, 172 S.W.3d 6, 12-13 (Tex. App.-Austin 2005, pet ref'd). 

 2. Applicable Law 

 We apply the two-pronged Strickland test to determine whether counsel's
representation was so deficient that it violated Reynolds's Sixth Amendment right to
counsel. Goodspeed v. State, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005); see
Strickland, 466 U.S. at 684; Hernandez v. State, 726 S.W.2d 53, 56-57 (Tex. Crim. App.
1986). To show that counsel was ineffective, an appellant must show by a preponderance
of the evidence that (1) counsel's representation fell below an objective standard of
reasonableness, and (2) there is a reasonable probability that, but for counsel's errors, the
result of the proceeding would have been different. Strickland, 466 U.S. at 686;
Hernandez, 726 S.W.2d at 55. 

 Before analyzing Reynolds's ineffective assistance of counsel claims, we
acknowledge that Reynolds's first issue requires a brief discussion of motions for new trial. 

 3. Motion for New Trial

 "As a prerequisite to obtaining a hearing, [a motion for new trial] must be supported
by an affidavit specifically showing the truth of the grounds attacked." Martinez v. State,
74 S.W.3d 19, 21 (Tex. Crim. App. 2002) (citing King v. State, 29 S.W.3d 556, 569 (Tex.
Crim. App. 2000); Reyes v. State, 849 S.W.2d 812, 816 (Tex. Crim App. 1993)). 
Reynolds's motion for new trial alleged that trial counsel was ineffective because he failed
to (1) properly investigate the facts and circumstances of Reynolds's case, (2) call certain
witnesses who were available and were willing to testify on Reynolds's behalf, (3) tell
Reynolds about any plea offers by the State, and (4) strike a prospective juror for cause
after the juror stated that he knew one of the State's witnesses on a personal level. The
motion also alleges that trial counsel (5) made repeated promises to Reynolds that he had
the case won, and (6) continually fell asleep during the trial. Facts supporting these
allegations are not part of the record. Additionally, Reynolds did not file any affidavits to
support her motion for new trial. 

 While the Texas Rules of Appellate Procedure do not require a motion for new trial
to be supported by affidavit, a judicial requirement is found in cases where the motion is
grounded on matters that are not already part of the record. Bahm v. State, 219 S.W.3d
391, 395 (Tex. Crim. App. 2007) (citing Bearden v. State, 648 S.W.2d 688, 690 (Tex. Crim.
App. 1983)); see Reyes v. State, 849 S.W.2d 812, 816 (Tex. Crim. App. 1993) (en banc)
(noting that an unrestricted requirement of a hearing on matters not determinable from the
record could lead to "fishing expeditions"). As such, since no reasonable grounds exist in
the record to support the claims in the motion, without affidavits to support the allegations
in the motion for new trial, Reynolds's motion for new trial was not proper. The claim to be
examined in her first issue then becomes whether Reynolds's counsel was ineffective for
failing to attach supporting affidavits.

 4. Appellate Counsel was Not Ineffective for Failing to Attach Supporting Affidavits

 In her motion for new trial, Reynolds alleged that a new trial should be granted on
the basis of ineffective trial counsel. There is nothing in the record to overcome the strong
presumption that failing to file the affidavits was something other than a strategic plan. 
None of the six allegations are supported by the record, and no affidavits were filed to offer
support for any of the allegations. Rylander v. State, 101 S.W.3d 107, 110 (Tex. Crim.
App. 2003) (noting that in most cases the undeveloped record on direct appeal will be
insufficient to satisfy the dual prongs of Strickland because the reasonableness of
counsel's decisions often involves facts not appearing in the appellate record). The record
does not indicate why no affidavits were filed in support of the motion for new trial. 

 Additionally, Reynolds has not shown how, or from whom, she could have secured
the affidavits. We therefore cannot conclude that Reynolds has satisfied the first prong
of Strickland. Accordingly, Reynolds has not shown that appellate counsel's performance
was ineffective. We overrule Reynold's first issue.

 5. Trial Counsel's Actions do Not Constitute Ineffective Assistance of Counsel

 In her second issue, Reynolds argues that during trial she was denied effective
assistance of counsel because her trial counsel generally failed to present a defense to the
charges brought against her. We review this issue applying the same standard and law as
previously stated, noting additionally that in general, on direct appeal, a silent record that
provides no explanation for counsel's conduct is insufficient to overcome the presumption
of reasonableness. Goodspeed, 187 S.W.3d at 392. (2) 

 "Trial counsel should ordinarily be afforded an opportunity to explain his actions
before being denounced as ineffective." Goodspeed, 187 S.W.3d at 392 (quoting Rylander
v. State, 101 S.W.3d 107, 111 (Tex. Crim. App. 2003)). Although a motion for new trial
based on ineffective assistance of trial counsel was filed, the allegations in the motion are
not the same as those before this court. In her motion for new trial, Reynolds stated six
instances of behavior she believed exhibited ineffective conduct from her trial counsel. On
appeal, she does not advance these arguments but rather contends that trial counsel failed
to present a defense to the charges against her. Reynolds advances her argument that
trial counsel had "no clear plan of defense" by calling into question trial counsel's opening
statements, his cross examination of Ranger Rivera, and his selection of witnesses. 

 Even assuming that these actions constitute error on the part of trial counsel, a trial
record seldom contains enough information to permit a reviewing court to evaluate the
merit of the allegations. Scheanette v. State, 144 S.W.3d 503, 510 (Tex. Crim. App. 2004).
Ineffective assistance of counsel claims must be "firmly rooted in the record;" we cannot
speculate as to the reasons trial counsel may have had for his actions. Goodspeed, 187
S.W.3d at 392. Because there is nothing in the record to indicate that the actions of
Reynolds's trial counsel were so outrageous that no competent attorney would have
engaged in it, we presume that counsel acted pursuant to a reasonable trial strategy. 
Garcia v. State, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001). We therefore overrule
Reynolds's second issue.

B. Motion for Mistrial

 Reynolds's third issue is that the trial court erred in failing to grant a mistrial when
the State's witness Ranger Rivera violated a motion in limine by mentioning that Francisco
Perez had been convicted for his part in the shooting. 

 During direct examination, the State asked Ranger Rivera about 106 phone calls
from Reynolds's cell phone to a number in Bishop, Texas. The following exchange
occurred:

 Q. (By the State): And were you able to determine whose number it was?

 A. (Ranger Rivera): Yes.

 Q. Whose number was it?

 A. That's Sara Perez is the owner of the phone and that's
where Frankie Perez lives.

 Q. Who is Frankie Perez?

 A. That's the suspect that was convicted in the shooting-

 (Defense Counsel): Objection. May we approach the Bench?


 The trial court then excused the jury and addressed Reynolds's objection. Although
the trial court denied Reynolds's motion for mistrial, an instruction to disregard the answer
was immediately given to the jury when they returned.

 1. Standard of Review

 We review a trial court's denial of a motion for mistrial for abuse of discretion. 
Hawkins v. State, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004). Mistrial is appropriate for
only highly prejudicial and incurable errors. Simpson v. State, 119 S.W.3d 262, 272 (Tex.
Crim. App. 2003). Generally, a prompt instruction to the jury to disregard the objectionable
testimony will cure error. Ovalle v. State, 13 S.W.3d 774, 783 (Tex. Crim. App. 2000). The
determination of whether an error justifies a mistrial is made by examining the particular
facts of the case. Id. A mistrial is required only when the testimony is "clearly calculated
to inflame the minds of the jury and is of such a character as to suggest the impossibility
of withdrawing the impression produced on the minds of the jury." Westmoreland v. State,
174 S.W.3d 282, 290 (Tex. App.-Tyler 2005, pet. ref'd) (quoting Hinojosa v. State, 4
S.W.3d 240, 253 (Tex. Crim. App. 1999)). 

 2. Analysis

 Although improper, the record does not indicate that Ranger Rivera's testimony was
calculated to inflame the minds of the jury. Additionally, the judge promptly instructed the
jury to disregard Ranger Rivera's entire answer. It is well settled that if a trial court
instructs a jury to disregard, we must presume that the jury followed the trial court's
instruction. Allen v. State, 202 S.W.3d 364, 370 (Tex. App.- Fort Worth 2006, pet. ref'd);
Ladd v. State, 3 S.W3d 547, 567 (Tex. Crim. App. 1999). 

 3. Harmless Error

 Even assuming that the trial court committed error, any such error is harmless when
viewed in light of the strong evidence establishing Reynolds's guilt. Wesbrook v. State, 29
S.W.3d 103, 119-20 (Tex. Crim. App. 2000). The State presented evidence of over 100
phone calls to Ms. Perez, the mother of Francisco Perez. Ms. Perez testified that Reynolds
was placing these calls to Francisco, her son. The State also presented evidence of a
$2,000 check, dated the day after the shooting, written from Reynolds to Francisco Perez. 
Throughout the trial, there was little dispute that Perez shot Benitez. The jury heard
testimony that Benitez identified Perez as the gunman in a line up. Additionally,
Reynolds's primary defense was the lack of direct evidence that she solicited Perez; not
that Perez was not the gunman. 

 Due to the overwhelming evidence establishing Reynolds's guilt, and the fact that
the jury had been exposed to strong evidence that indicated Perez was likely to have been
the gunman, we cannot say that the mention of Perez's conviction harmed Reynolds. Tex.
R. App. P. 44.2(a) (providing that if the appellate record in a criminal case reveals
constitutional error, the appellate court must reverse a judgment of conviction or
punishment unless the court determines beyond a reasonable doubt that the error did not
contribute to the conviction or punishment); see Chapman v. California, 386 U.S. 18, 23
(1967) (the critical inquiry is whether the error may have contributed to appellant's
conviction or punishment). We overrule Reynolds's third issue.

C. Factual Sufficiency

 Appellant additionally argues that the evidence is factually insufficient to support the
conviction of criminal solicitation. In conducting a factual sufficiency review, we view the
evidence in a neutral light to determine whether a jury was rationally justified in finding guilt
beyond a reasonable doubt. Watson v. State, 204 S.W.3d 404, 414-17 (Tex. Crim. App.
2006). 

 A person commits the offense of criminal solicitation of capital murder if, "with intent
that [capital murder] be committed, he requests, commands, or attempts to induce
another," Tex. Penal Code Ann. § 15.03(a), to "intentionally or knowingly cause the death
of an individual," id. § 19.02(b), "for remuneration or the promise of remuneration." id. §
19.03(a)(3). Viewing all evidence in a neutral light, without favoring either party, we
conclude that the evidence is factually sufficient to support the jury's verdict. 

 When Benitez testified, the jury heard evidence that Perez shot Benitez multiple
times; all but one of the bullet wounds appear in Benitez's torso area. Although no direct
evidence links Reynolds to the crime; the State presented the jury with bank and telephone
records that showed multiple phone calls and a transfer of a large sum of money from
Reynolds to Perez near the time of the shooting. Moreover, the behavior exhibited by
Reynolds, both during and immediately following the shooting, could have supported the
jury's verdict. Benitez testified that he believed Perez entered the garage apartment
through Benitez's parents' house. He also testified that Reynolds had run into the house
upon hearing a knock at the door. Although Reynolds told Ranger Rivera that she called
911 at the time of the shooting, the Ranger testified that there was no record of a 911 call
being placed by Reynolds. A reasonable juror could have inferred from this evidence that
Reynolds let Perez into the house. Additionally, the jury heard testimony from the police
and investigators who spoke to Reynolds after the shooting. Reynolds denied knowing
Francisco Perez, although the bank statements and phone records prove otherwise.

 Reynolds argues that the phone calls were to her cleaning lady, Sara Perez, and
that the handwriting of the name "Francisco Perez" on the front of the check seemed more
likely to match the endorsement on the back than Reynolds's own writing. The jury is the
sole judge of the credibility of the witnesses and the weight to be given to the evidence,
and may choose to believe all, some, or none of it. Margraves v. State, 34 S.W.3d 912,
919 (Tex. Crim. App. 2000) (en banc). Sara Perez testified that Reynolds had called her
and told her to lie and say that she was her cleaning lady if she was questioned. 


 A reasonable jury could have convicted Reynolds of criminal solicitation of capital
murder based on the circumstantial evidence presented. It is well settled that
circumstantial evidence, by itself, may be enough to support a jury's verdict. See Brown
v. State, 911 S.W.2d 744, 746 (Tex. Crim. App. 1995) (noting that circumstantial evidence
often has equal or even greater probative value than direct evidence). Additionally,
considering all of the evidence and the reasonable inferences therefrom in a neutral light,
the evidence is not so weak that the conviction is clearly wrong or manifestly unjust, and
the proof of guilt is not against the great weight and preponderance of evidence. Watson,
204 S.W.3d at 416-17. We therefore overrule Reynolds's fourth issue.

III. CONCLUSION

 The judgment of the trial court is affirmed.



 

 ROGELIO VALDEZ

 Chief Justice


Do not publish. 

Tex. R. App. P. 47.2(b).


Memorandum Opinion delivered and filed 

this the 2nd day of August, 2007.
1. A hearing on the motion for new trial had been calendered for a date after the expiration of the trial
court's plenary power.
2. Where the trial record is inadequate to permit review on direct appeal, an ineffective assistance of
counsel claim should be raised in a post-conviction petition for writ of habeus corpus. Hernandez v. State,
726 S.W.2d 53, 57 (Tex. Crim. App. 1986); Moore v. State, 700 S.W.2d 193, 204-05 (Tex. Crim. App. 1985).