

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-23-00559-CR

Kerwin **BRYANT**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 399th Judicial District Court, Bexar County, Texas
Trial Court No. 2019CR12429
Honorable Raymond Angelini, Judge Presiding[1]

Opinion by:    Luz Elena D. Chapa, Justice

Sitting:    Luz Elena D. Chapa, Justice
Liza A. Rodriguez, Justice
Lori I. Valenzuela, Justice

Delivered and Filed: July 31, 2024

AFFIRMED

Appellant Kerwin Bryant challenges his judgment of conviction for aggravated robbery.
He argues the trial court erred by admitting evidence of certain exhibits consisting of images
produced from video surveillance and certain video recordings showing police questioning him.
We affirm.

---

[1] The Honorable Raymond Angelini presided over sentencing and signed the judgment. The Honorable Frank J. Castro presided over the trial.

**BACKGROUND**

In July and August 2019, a series of convenience store robberies took place in San Antonio, Texas. The San Antonio Police Department ("SAPD") believed the robberies were connected. On the evening of August 5, 2019, two individuals robbed the Perrin Pantry on Perrin Beitel. Approximately eleven days later, another robbery occurred. After receiving a vehicle description and the paper license plate number, SAPD Patrolman David Ramos spotted a vehicle matching the description and plate number and attempted to pull the vehicle over. A chase ensued, the vehicle eventually stopped, and the occupants exited and fled on foot in different directions. Within a few blocks of the vehicle, Patrolman Ramos found a hoodie, a "BB" or "pellet" gun, a bandana, gloves, and a black bag. Within a half-mile of where the vehicle and the items were located, Bryant, on foot, was stopped by SAPD Patrolman Salaam al Aziz. Bryant was immediately released without being identified. Later that August, an image from Patrolman al Aziz's bodycam showing Bryant was displayed on the Crime Stoppers website. Bryant contacted SAPD and stated he wanted to come in to discuss his photo on the website. On September 3, 4, and 5, Bryant was questioned by police officers in connection with the robberies. On September 4, his DNA was taken pursuant to a warrant.

On November 13, 2019, Bryant was charged with aggravated robbery for the Perrin Pantry robbery. *See* TEX. PENAL CODE § 29.03. A jury found Bryant guilty, and the trial court sentenced him to thirty years in the Texas Department of Criminal Justice Institutional Division.

This appeal followed.

**ADMISSION OF STATE EXHIBITS 33 THROUGH 45**

Bryant argues the trial court abused its discretion by admitting State Exhibits 33 through 45, violating his rights under Rules 401 and 403 of the Texas Rules of Evidence. He specifically

contends the evidence was unfairly prejudicial and substantially outweighed by the danger of unfair prejudice.

## A. Standard of Review and Law

We review a trial court's admission of images for an abuse of discretion. *Pawlak v. State*, 420 S.W.3d 807, 810 (Tex. Crim. App. 2013); *see Brumfield v. State*, 641 S.W.3d 568, 576 (Tex. App.—Tyler 2022, pet. ref'd). "As long as the trial court's ruling was at least within the zone of reasonable disagreement, the appellate court will not intercede." *Brumfield*, 641 S.W.3d at 576. "Furthermore, if the trial court's evidentiary ruling is correct on any theory of law applicable to that ruling, it will not be disturbed, even if the trial judge gave the wrong reason for a correct ruling." *Id.*

"Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." TEX. R. EVID. 401. "Evidence does not need to prove or disprove a particular fact by itself to be relevant under this rule; it is sufficient if the evidence provides even a small nudge toward proving or disproving a fact of consequence." *Hall v. State*, 663 S.W.3d 15, 31 (Tex. Crim. App. 2021). "But, if the evidence fails to meet this threshold standard, it is inadmissible." *Id.*; *see* TEX. R. EVID. 402 ("Irrelevant evidence is not admissible.").

"Texas Rule of Evidence 403 is one of judicial economy. It excludes otherwise relevant evidence when the costs of admission outweigh its utility." *Hart v. State*, 688 S.W.3d 883, 891 (Tex. Crim. App. 2024). The Rule provides "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." TEX. R. EVID. 403. "Unfair prejudice refers to the evidence's 'tendency to tempt the jury into finding guilt on grounds apart from proof of the offense charged.'" *Perkins v.*

*State*, 664 S.W.3d 209, 216 (Tex. Crim. App. 2022) (quoting *State v. Mechler*, 153 S.W.3d 435, 440 (Tex. Crim. App. 2005)).

We apply our Rule 403 analysis by examining several factors, including "(1) the strength of the evidence's probative value, (2) the potential for the evidence to 'impress the jury in some irrational but nevertheless indelible way,' (3) [t]he amount of time required at trial to develop the evidence, and (4) the proponent's need for the evidence." *Hart*, 688 S.W.3d at 891; *see, e.g.*, *Hall*, 663 S.W.3d at 32 ("When undertaking a Rule 403 analysis, a trial court must balance: '(1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted.'" (quoting *Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006))). "Of course, these factors may well blend together in practice." *Gigliobianco*, 210 S.W.3d at 642.

We also consider "the number of exhibits offered, their gruesomeness, their detail, their size, whether they are in color or black-and-white, whether they are close-up, whether the body depicted is clothed or naked, the availability of other means of proof, and other circumstances unique to the individual case." *Williams v. State*, 301 S.W.3d 675, 690 (Tex. Crim. App. 2009). If an image has probative value for the jury in making its decision, "we cannot hold that the trial court has abused its discretion merely because it admitted the evidence." *Sonnier v. State*, 913 S.W.2d 511, 519 (Tex. Crim. App. 1995); *see, e.g.*, *Estrada v. State*, 352 S.W.3d 762, 771 (Tex. App.—San Antonio 2011, pet. ref'd) (quoting *Sonnier* for same proposition).

In other words, we may only reverse the trial court's judgment "rarely and only after a clear abuse of discretion." *Perkins*, 664 S.W.3d at 217 (quoting *Mozon v. State*, 991 S.W.2d 841, 847 (Tex. Crim. App. 1999)) (internal quotation marks omitted). However, we "cannot simply conclude 'the trial court did in fact conduct the requir[ed] balancing test and did not rule arbitrarily and capriciously.'" *Id.* (quoting *Mozon*, 991 S.W.2d at 847) (internal quotation marks omitted). We must "measure the trial court's ruling against the relevant criteria by which a Rule 403 decision is made." *Id.*

## B. The Record

Turning to the record, the State filed its notice of intent to introduce extraneous offense evidence, explaining it was admissible for purposes of providing context to Bryant's September 5, 2019 questioning by Detective Valadez. During the September 5 questioning, Detective Valadez showed Bryant thirteen pages of images relating to multiple convenience store robberies, and Bryant made several statements about the images. After hearing argument on the issue, the trial court permitted the State to introduce the evidence over Bryant's objections on both relevance and prejudice grounds.

During trial, the State called Detective Valadez to testify regarding, among other things, Bryant's September 5 questioning. At the same time, it introduced a video recording of that questioning. In connection with that recording, the State sought to introduce the thirteen pages of images—identified as Exhibits 33 through 45—which Detective Valadez showed Bryant on September 5.[2] Exhibits 33, 35–39, and 41–45 depict one or two individuals inside or near a convenience store at what appears to be various stages of a robbery. The individuals are wearing

---

[2] The exhibits contain a total of 40 images. Bryant again objected to their admission, but the trial court overruled his objection.

either a black hoodie or head covering, black facial coverings, often wearing white gloves, and one individual is carrying a black object and bag. Exhibit 34 depicts the front of a convenience store named "Stop n Joy," and during the September 5 questioning, Bryant explained he previously had been to Stop n Joy. [3] For exhibits 35–38, Bryant also explained he was not the individual in the image but added the individuals in the images wore various pieces of his clothing, including his shoes, so people "were coming into [his] house" to take them.

Exhibits 40 and 45 pertain to the Perrin Pantry robbery. Exhibit 40 includes an image taken from the internet showing a silver Honda Odyssey minivan on a white background next to an image taken from video surveillance of the rear end of a silver Honda Odyssey minivan. When addressing Exhibit 40 during the September 5 questioning, Detective Valadez explained to Bryant there was surveillance video of Bryant in the minivan, and Bryant responded by stating he had been inside the minivan, and it was owned by an individual named "X." At trial, Detective Valadez testified Bryant also stated the minivan was used in two robberies, which was consistent with what the detective knew from his investigation. A surveillance video from an auto mechanic shop across from the Perrin Pantry also shows a silver Honda Odyssey minivan being used in the Perrin Pantry robbery. Exhibit 45—which includes five images—contains one image showing the passenger side of a silver Honda Odyssey minivan leaving the scene of the Perrin Pantry robbery. During the September 5 questioning, Bryant identified himself as one of the individuals seen in Exhibit 45. Detective Valadez testified he had circled the images where Bryant had indicated the individual was him. [4] Bryant also identified the minivan as the vehicle he rode in. Bryant denied participating

---

[3] Unlike the other exhibits, Detective Valadez never specifically identified Exhibit 33 during his testimony as one of the images he was showing to Bryant during the September 5 questioning. However, Detective Valadez testified he went through the exhibits in the order they were introduced into evidence while he questioned Bryant, and the exhibits have a second set of numbering on them—#1 through #13. The two exhibit numbering systems—1–13 and 33–45—were sometimes used interchangeably at trial.

[4] Exhibit 45 shows an individual in the two images circled.

in or receiving money from the Perrin Pantry robbery, but he explained that before the robbery had commenced, he was wearing the clothes in question and was standing near the auto repair shop across the street from the Perrin Pantry, and an unidentified individual he was with stated to Bryant he was going to commit the robbery.[5]

## C. Analysis

### 1. Probative Value

Here, Exhibits 40 and 45 depict the vehicle involved in the Perrin Pantry robbery and individuals in images of the Perrin Pantry robbery Bryant identified as himself.[6] The exhibits also corroborate video surveillance evidence, witness testimony about the Perrin Pantry robbery, and other evidence showing the nature of the weapon and vehicle used in the offense. The exhibits therefore have high probative value and a tendency to prove a fact of consequence. *See* TEX. R. EVID. 401; *Hall*, 663 S.W.3d at 31.

The probative value of Exhibits 33–39 and 41–44 is different because they do not depict the Perrin Pantry robbery. Bryant stated he had previously been to the "Stop n Joy" store depicted in Exhibit 34, providing minimal probative value. But his statement sheds little or no light on whether he robbed the store, and there is no other evidence in the record discussing the store as involved in one of the robberies. Exhibit 34 therefore has low probative value. Bryant's statements regarding Exhibits 35–38 suggesting individuals were wearing his clothing in other robberies provides a "small nudge" toward proving he was involved in the robberies. *See Hall*, 663 S.W.3d at 31.

---

[5] A surveillance video from an auto repair shop across from Perrin Pantry shows two individuals who appear to be casing the Perrin Pantry for several minutes before the robbery.

[6] Bryant's counsel acknowledges this in his brief.

Exhibits 33, 39, and 41 through 44 are similar and corroborate other testimony. Exhibits 41 through 44 depict an individual wearing a black hoodie, a black mask, black pants, white gloves, and holding a black bag and a black object that looks like a firearm.[7] Patrolman Ramos testified that after an August 16, 2019 robbery—eleven days after the Perrin Pantry robbery—he attempted to stop a vehicle whose paper license plate and description matched a vehicle recently involved in a different robbery. Similarly, a short chase ensued before the vehicle occupants stopped and fled on foot. Patrolman Ramos testified that, after the suspects exited the vehicle and fled, he found within a few blocks of the vehicle a dark hoodie, a "BB" or "pellet" gun, a black bandana, black gloves with white writing on them, and a black bag. Bryant explained to Detective Valadez, during separate questioning on September 4, 2019, he was one of the individuals who fled the vehicle on foot, removed his hoodie after he fled the vehicle, and the "pellet" gun belonged to him. Other evidence at trial showed Bryant's DNA was not excluded as a major contributor on the gloves.[8] All of this evidence is corroborated by witness testimony and surveillance video from the Perrin Pantry robbery. The trial court therefore could have concluded, within the zone of reasonable disagreement, that alongside this evidence, the exhibits had probative value and some tendency to prove a fact of consequence. *See id.*; *Brumfield*, 641 S.W.3d at 576. Accordingly, this factor weighs in favor of admission.

---

[7] Exhibits 33 and 39 are similar to Exhibits 41 through 44. Exhibit 33 depicts an individual wearing a black hoodie, with his face covered and with an object that appears to be a firearm. Exhibit 39 is functionally identical in portraying the individual in those exhibits, except the individual appears to be wearing a black t-shirt and a long sleeve t-shirt underneath.

[8] Patrolman al Aziz testified at trial he stopped Bryant on a nearby street that same night the individuals fled the vehicle, but he let him go before collecting identifying information because Bryant did not match the clothing description.

### 2. The Potential to Impress the Jury in Some Irrational, Indelible Way

Because of their high probative value based on their depiction of the Perrin Pantry robbery, Bryant's own admissions placing himself at the robbery scene, and the other corroborating evidence, Exhibits 40 and 45 are unlikely to impress the jury in some irrational or indelible way. *See Sonnier*, 913 S.W.2d at 517 (providing "if the power of the visible evidence emanates from nothing more than what the defendant has himself done we cannot hold that the trial court has abused its discretion merely because it admitted the evidence."); *see also Hall*, 663 S.W.3d at 32.

Turning to the other exhibits, Exhibit 34 has very little probative value other than depicting the store where one of the robberies occurred, and Bryant had stated he previously had been there. But the image does not include any individuals in the process of committing a robbery or any other prejudicial elements. It is therefore unlikely to impress the jury in some irrational, indelible way, suggest the jury would make its decision on an improper basis, or confuse or distract the jury from the main issues. *See* TEX. R. EVID. 403; *Hall*, 663 S.W.3d at 32.

Exhibits 33, 35–39, and 41–44—which include thirty-two color images of other robberies—are potentially prejudicial because they depict other robberies. However, as noted, the images have probative value. Specifically, the similarity in the clothing, bag, and weapon-like object to the Perrin Pantry evidence, alongside other evidence connecting Bryant to the Perrin Pantry robbery, makes the images helpful to the jury in making its decision. *See Sonnier*, 913 S.W.2d at 517 (providing if image has probative value, "we cannot hold that the trial court has abused its discretion merely because it admitted the evidence."); *see also Gigliobianco*, 210 S.W.3d at 642 ("Of course, these factors may well blend together in practice."). And any prejudicial effect is diminished by the low pixel density of the images and their small size, with

mostly taking up little space on the standard, letter-sized exhibits.[9] *See Williams*, 301 S.W.3d at 690. Moreover, the images are not inflammatory, shocking, or gruesome, and they depict a little more than a blurry image of a full or upper torso view of individuals in the process of committing a robbery. *See id.*; *Gigliobianco*, 210 S.W.3d at 642.

Importantly, the images were also presented alongside Exhibits 40 and 45, which connect Bryant to the Perrin Pantry robbery, and Exhibits 40 and 45 were the only images the State emphasized during its questioning of Detective Valadez. *See Gigliobianco*, 210 S.W.3d at 642. The trial court therefore could have concluded within the zone of reasonable disagreement the jury was capable of discerning for itself, based on those exhibits and the other corroborating evidence, whether Bryant was responsible for the Perrin Pantry robbery. *See Hall*, 663 S.W.3d at 34. And so there is little chance the jury would confuse the images in the other robberies with the Perrin Pantry robbery. *See* TEX. R. EVID. 403; *Hall*, 663 S.W.3d at 32. In addition, Bryant repeatedly denied his involvement with the other robberies during his September 5 questioning, and the trial court therefore could have concluded, within the zone of reasonable disagreement, the jury "was equipped to evaluate the probative force" of Exhibits 33, 35–39, and 41–44. *See Gigliobianco*, 210 S.W.3d at 642. We therefore cannot say the trial court's evaluation of this evidence was outside the zone of reasonable disagreement, and this factor weighs in favor of admission.

### 3. The Time Needed to Develop the Evidence

The State did not spend much time on the exhibits themselves. Of approximately 650 pages of trial transcript, Exhibits 33–45 were authenticated and developed across approximately forty pages during the testimony of a single witness—Detective Valadez. *See Hall*, 663 S.W.3d at 34;

---

[9] Defense counsel described the quality of the images as "crummy" during closing. Because the September 5, 2019 questioning is also recorded in low video quality, Exhibits 33–45 are not visible in the video recording, which Detective Valadez concedes during his testimony.

*see also Hart*, 688 S.W.3d at 893 (providing time needed should not cause "undue delay" and "the extent to which the jury is distracted from considering the charged offense"). Furthermore, there was little time spent introducing the exhibits because their introduction overlapped with the playing of Bryant's September 5 questioning. *See Hart*, 688 S.W.3d at 893; *Hall*, 663 S.W.3d at 34. And most of the time spent on the exhibits focused on Exhibits 40 and 45—exhibits depicting the Perrin Pantry robbery—and very little time on the rest, aside from identifying them when they are being discussed during the September 5 questioning. Moreover, the bulk of Detective Valadez's testimony addressed other matters: the collection of evidence, playing the video exhibits of Bryant's September 4 and 5 questioning, Detective Valadez's testimony about the questioning, Bryant's admissions during questioning, and the propriety of confiscating and searching Bryant's personal property. Finally, the State only briefly mentions the images during its closing, focusing instead on the DNA evidence and Bryant's admissions during his interviews with Detective Valadez. *See Hart*, 688 S.W.3d at 893; *Hall*, 663 S.W.3d at 34. Thus, this factor weighs in favor of admission.

### 4. The State's Need for the Evidence

Without the exhibits, it would have been extremely difficult to follow Detective Valadez's questioning of Bryant and for the State to provide adequate context to what Detective Valadez discussed with Bryant on September 5. Also, Bryant's admissions about the clothes in the images, along with identifying himself in the images involving the Perrin Pantry robbery, connect him to the other evidence critical to the State's case: the items found by Patrolman Ramos and the DNA found on the gloves. *See Hart*, 688 S.W.3d at 892 (providing "State has a need for the evidence where it would prove some consequential fact unavailable from other sources"); *Hall*, 663 S.W.3d at 32. This factor therefore also weighs in favor of admission.

Measuring the trial court's ruling against the relevant criteria by which a Rule 403 decision is made, we cannot conclude the trial court's admission of Exhibits 33 through 45 was outside the zone of reasonable disagreement. *See Perkins*, 664 S.W.3d at 217. Because we cannot conclude the admission of the exhibits was outside the zone of reasonable disagreement, we cannot conclude the trial court abused its discretion by admitting the exhibits. Accordingly, we overrule this point of error.

### BRYANT'S SEPTEMBER 4–5, 2019 STATEMENTS

Bryant contends the trial court erred by admitting Exhibit 46 into evidence. Exhibit 46 is a redacted video recording of his September 4, 2019 statements made to Detective Valadez. On appeal, Bryant argues there was no lawful basis to keep him in custody that day after the DNA withdrawal. However, the record shows Bryant objected to the admission of those statements made after the DNA was taken. The State agreed with Bryant, and the trial court excluded those statements, which were redacted in Exhibit 46. Therefore, Bryant received all of the relief he requested, and nothing is preserved for our review. *See, e.g.*, *Adams v. State*, 685 S.W.2d 661, 670 (Tex. Crim. App. 1985) ("Appellant received all the relief requested. Nothing is presented for review."); *Westmoreland v. State*, 174 S.W.3d 282, 290 (Tex. App.—Tyler 2005, pet. ref'd) (same).

Bryant also contends he invoked his right to remain silent and to counsel when he stated "I need to talk to a lawyer" during his September 5 questioning by Detective Valadez. He argues his statements to Detective Valadez thereafter should not have been admitted into evidence. The record, however, shows when Bryant argued at trial that the portion of his September 5, 2019 interview should be suppressed, the trial court agreed, explaining "anything from that point on where he invokes his attorney I'll grant . . . defendant' request to suppress." And Exhibit 47 excludes Bryant's invocation of his right to counsel and statements made thereafter. In other

- 12 -

words, Bryant again received all of the relief he requested, and there is nothing for our review. *See Adams*, 685 S.W.2d at 670; *Westmoreland*, 174 S.W.3d at 290. We therefore overrule Bryant's arguments pertaining to the admission of his September 4-5 statements.

## CONCLUSION

The judgment is affirmed.

Luz Elena D. Chapa, Justice

DO NOT PUBLISH