# NO. 12-13-00050-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *CESAR GOMEZ,*<br>*APPELLANT* | *§* | *APPEAL FROM THE 241ST* |
| *V.* | *§* | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,*<br>*APPELLEE* | *§* | *SMITH COUNTY, TEXAS* |

## *OPINION*

Cesar Gomez appeals his conviction for continuous sexual abuse of a child younger than fourteen years of age, for which he was sentenced to imprisonment for life without the possibility of parole. Appellant raises fourteen issues on appeal. We affirm.

## BACKGROUND

Appellant began sexually abusing his daughter, F.G., in 2006 when she was eight years old. According to F.G., the sexual abuse continued until March 1, 2012, when she was fourteen years old. On March 5, 2012, she made an outcry statement to a school counselor concerning Appellant's sexually abusing her. As a result, Appellant was arrested and confessed in a videotaped interview to having sexually assaulted F.G. multiple times within the preceding six month period as a result of his being intoxicated. Officers searched Appellant's home and discovered, among other things, an expensive video surveillance system with multiple cameras, one of which was aimed at F.G.'s bed and the other of which was aimed at the bed in the master bedroom.

Appellant was charged by indictment with aggravated sexual assault and pleaded "not guilty." The indictment was later amended[1] to charge Appellant with continuous sexual abuse of a

---

[1] Appellant has raised several issues concerning whether the indictment was properly amended.

child under fourteen years of age.  The matter proceeded to a jury trial, following which the jury found Appellant "guilty" as charged.  After a trial on punishment, the jury assessed Appellant's punishment at imprisonment for life without the possibility of parole.  The trial court sentenced Appellant accordingly, and this appeal followed.

<u>**ADMISSIBILITY OF PUNISHMENT EVIDENCE**</u>

In his first, second, third, and fourth issues, Appellant argues that the trial court abused its discretion in admitting two photographs during his trial on punishment in violation of Texas Rules of Evidence 401, 402, and 403.

## Standard of Review and Governing Law

We review a trial court's ruling on the admissibility of evidence for an abuse of discretion. ***Montgomery v. State***, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (op. on reh'g). "That is to say, as long as the trial court's ruling was at least within the zone of reasonable disagreement, the appellate court will not intercede." ***Id.*** Furthermore, if the trial court's evidentiary ruling is correct on any theory of law applicable to that ruling, it will not be disturbed even if the trial judge gave the wrong reason for a correct ruling.  *See **De La Paz v. State***, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009).

Under the Texas Rules of Evidence, relevant evidence is generally admissible.  TEX. R. EVID. 402.  Texas Code of Criminal Procedure, Article 37.07, Section 3(a)(1), which governs the admissibility of evidence during the punishment phase of a noncapital trial, states, "Regardless of the plea and whether the punishment [is] assessed by the judge or the jury, evidence may be offered by the state and the defendant as to any matter the court deems relevant to sentencing. . . ." TEX. CODE CRIM. PROC. ANN. art. 37.07, § 3(a)(1) (West Supp. 2014).  In discussing the practical effect of Article 37.07, the Texas Court of Criminal Appeals has stated as follows:

> [U]nder Article 37.07, the admissibility of evidence in a non-capital trial is a matter of policy, including the policy of giving complete information to the jury to allow it to tailor an appropriate sentence for the defendant. The result is that what is relevant for the jury to hear during punishment is determined by whatever is helpful to the jury.

***Mata v. State***, 226 S.W.3d 425, 432 (Tex. Crim. App. 2007) (citation omitted).  With respect to the relevance of photographic evidence, the court of criminal appeals further instructs as follows:

> A photograph should add something that is relevant, legitimate, and logical to the testimony that accompanies it and that assists the jury in its decision-making duties.  Sometimes this will, incidentally, include elements that are emotional and prejudicial.  Our case law is clear on this

2

> point: If there are elements of a photograph that are genuinely helpful to the jury in making its decision, the photograph is inadmissible only if the emotional and prejudicial aspects substantially outweigh the helpful aspects.

*Erazo v. State*, 144 S.W.3d 487, 491–92 (Tex. Crim. App. 2004).

Under Rule 403 of the Texas Rules of Evidence, even relevant "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice . . . ." TEX. R. EVID. 403. "Rule 403 favors admissibility of relevant evidence, and the presumption is that relevant evidence will be more probative than prejudicial." *Montgomery*, 810 S.W.2d at 389. Rule 403 requires both trial and reviewing courts to analyze and balance (1) the probative value of the evidence (2) the potential to impress the jury in some irrational, yet indelible, way, (3) the time needed to develop the evidence, and (4) the proponent's need for the evidence. *See Erazo*, 144 S.W.3d at 489. In making this determination, we consider factors including (1) the number of exhibits offered, (2) their gruesomeness, (3) their detail, (4) their size, (5) whether they are black and white or color, (6) whether they are close-up shots, (7) whether the body is naked or clothed, (8) the availability of other means of proof, and (9) other circumstances unique to the individual case. *Santellan v. State*, 939 S.W.2d 155, 172 (Tex. Crim. App. 1997).

**Pornographic Photographs of Appellant and His Wife**

In the instant case, the State sought to admit two photographs recovered from Appellant's cellular telephone. Each of these pictures was taken from Appellant's point of view. The first picture depicts Appellant's wife placing her lips on his penis. The second picture depicts Appellant's wife placing her tongue on the underside of his penis. Appellant objected to the admissibility of these photographs, arguing that they were not relevant and were "more prejudicial than probative." The trial court overruled Appellant's objections.[2]

*Relevance*

At trial, the State asserted that the photographs were relevant because the photographs were of Appellant's penis, "and that's what that little girl had to look at for six years." And while

---

[2] Thereafter, the parties discussed with the trial court whether the penis depicted in the picture belonged to Appellant. The trial court admitted the photographs conditioned on the State's proving Appellant's identity therein. Later, the State called Appellant's girlfriend as a witness. She identified Appellant's wife in the photographs and further identified the penis depicted in the photographs as Appellant's. The trial court indicated its intent to admit the photographs for all purposes. Appellant objected generally. The trial court overruled Appellant's objections "for the reasons previously stated by the Court in response" thereto. It is apparent from the record that the trial court understood that Appellant was renewing his previous objections. *See Taylor v. State*, 939 S.W.2d 148, 155 (Tex. Crim. App. 1996).

the State's assertion concerning Appellant's abuse of F.G. is uncontested, we do not agree that it was helpful to the jury to view pictures of Appellant's penis so that it could see precisely what F.G. saw.

However, we are not bound by this underlying rationale for admissibility. *See De La Paz*, 279 S.W.3d at 344. An underlying theory of Appellant's defense was based on his assertion that his sexual abuse of F.G. took place during the six month period preceding her outcry and resulted from his being intoxicated. Contrary to the limited timeline of abuse asserted by Appellant, F.G. testified that Appellant regularly sexually assaulted her in her bedroom from 2006 through 2012. When officers searched Appellant's house, they discovered, among other things, a $1,200.00 video surveillance system with multiple cameras, one of which was aimed at F.G.'s bed and the other of which was aimed at the bed in the master bedroom. The system was connected through the walls to a recording device located in the master bedroom with a monitor that displayed the various camera feeds. The record reflects that officers were unsuccessful in recovering past videos recorded by the surveillance system. Nonetheless, the record also supports that Appellant admitted to having used the surveillance system on one occasion to record his sexual abuse of F.G.[3]

Consequently, the pictures recovered from Appellant's cellular telephone depicting his wife performing fellatio on him tend to support the State's theory that Appellant regularly engaged in voyeurism.[4] Therefore, the State's establishing that Appellant engaged in voyeurism and used his expensive surveillance system to further that end was helpful to the jury in assessing Appellant's punishment because it contradicted his assertion that his sexual abuse of F.G. was limited to a handful of regrettable encounters as a result of his being intoxicated. Rather, it tends to show that Appellant invested a substantial sum of money and time installing a video system to record himself sexually abusing F.G. Accordingly, we conclude that the trial court did not err in overruling Appellant's relevance objection to these exhibits.

---

[3] The record reflects that Appellant did not frequently sleep in the master bedroom. But F.G. told the nurse who examined her that when Appellant would sexually assault her in her bedroom, he would go into the master bedroom afterward. The jury reasonably could have concluded from this evidence that Appellant went to the master bedroom on these occasions to watch the video taken of his sexual abuse of F.G.

[4] A "voyeur" is a person who derives sexual gratification from observing the sex organs or sexual acts of others, especially from a secret vantage point. *See* THE AMERICAN HERITAGE DICTIONARY 1356 (2nd College Ed. 1982).

*Danger of Unfair Prejudice*

We next consider whether the probative value of these photographs is substantially outweighed by the danger of unfair prejudice to Appellant. We first note that the probative value of the evidence is high. The jury had a wide range of punishment to consider. *See* Tex. Penal Code Ann. § 21.02(h) (West Supp. 2014); Tex. Gov't Code Ann. § 508.145(a) (West Supp. 2014). And while the thought of Appellant's committing this act against his daughter is deplorable in and of itself, evidence tending to support that he did so regularly over a period of years rather than at random was extremely helpful to the jury in assessing his punishment.[5]

Furthermore, the State had a significant need for this evidence, particularly in light of the fact that it was unable to recover any past video from the recording device. Further still, the State spent a relatively short time developing the evidence during a very brief exchange with Detective Gregg Roberts concerning the recovery of the pictures and a slightly longer period spent questioning Appellant's girlfriend in order to identify the subjects of the photograph.[6]

As for the exhibits, they are two 8″x10″ color photographs that depict a close-up shot of Appellant's wife engaged in an intimate act with her husband's exposed penis. And despite the fact that the photographs were taken with a cellular telephone, they are quite detailed. Nonetheless, the photos do not depict anything particularly "gruesome," nor do they appear to depict an illegal act.

Of course, we cannot discount the possibility that these photographs may have potentially impressed the jury in some irrational way. Indeed, Appellant's photographing his wife during her performance of oral sex and the secondary gratification he received from having taken the photograph might be considered to be repugnant by some jurors. But its potential to impress the jury in some irrational way was muted given the totality of the evidence. Specifically, Appellant's depiction in and possession of this pornographic material was likely to be construed as less alarming by the jury than the detailed evidence it heard concerning Appellant's repeatedly sexually abusing his daughter for six years beginning when she was eight years old. *See, e.g.*,

---

[5] We are unaware of any alternative evidence the State could have offered to prove Appellant's proclivity for voyeurism. In his brief, Appellant suggests an alternative means of permitting the jury to view Appellant's genitalia by allowing Appellant to pose for a nonprovocative picture. Of course, Appellant's suggestion is made in response to the reasons provided by the State at trial for admitting the photograph and has no bearing on this alternative theory of relevance.

[6] The State's questioning of Appellant's girlfriend for this purpose takes place over approximately three pages of the reporter's record.

5

*Pallm v. State*, No. 12-10-00329-CR, 2011 WL 6043025, at *3 (Tex. App.–Tyler Nov. 30, 2011, pet. ref'd) (mem. op., not designated for publication) (the appellant's possession of a large cache of pornographic pictures and videos depicting young girls likely to be construed as less heinous by jury than detailed evidence it heard concerning the appellant's sexually assaulting an eleven-year-old girl while his wife slept in a medicated state in same room). Therefore, we hold that the especially high probative value of the photographic evidence in question is not substantially outweighed by the danger of unfair prejudice.

Appellant's first, second, third, and fourth issues are overruled.

### CHARGE ERROR - INCREASING CHRONOLOGICAL PERIMETER FOR OFFENSE

In his fifth issue, Appellant argues that the trial court erred "in failing to give instructions to contextualize the nonbinding date of [the] offense in order to prevent reliance on conduct [that occurred] outside of the chronological perimeter" for continuous sexual abuse of a child.

### Standard of Review

We review claims of jury charge error under the two pronged test set out in *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g); *see Kuhn v. State*, 393 S.W.3d 519, 524 (Tex. App.–Austin 2013, pet. ref'd); *Swearingen v. State*, 270 S.W.3d 804, 808 (Tex. App.–Austin 2008, pet. ref'd). We first determine whether error exists. *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005); *Swearingen*, 270 S.W.3d at 808. If error exists, we next evaluate the harm caused by the error. *See Ngo*, 175 S.W.3d at 743; *Swearingen*, 270 S.W.3d at 808. The degree of harm required for reversal depends on whether that error was preserved in the trial court. *Kuhn*, 393 S.W.3d at 524. When error is preserved in the trial court by a timely objection, the record must show only "some harm." *Almanza*, 686 S.W.2d at 171; *Swearingen*, 270 S.W.3d at 808. By contrast, where no objection is made to charge error, reversal is required only if the error resulted in "egregious harm." *See Neal v. State*, 256 S.W.3d 264, 278 (Tex. Crim. App. 2008).

### Error in the Court's Charge

The offense of continuous sexual abuse of a young child became effective on September 1, 2007, and the statute does not apply to acts of sexual abuse committed before that date.[7] *See Kuhn*, 393 S.W.3d at 524. Moreover, the statute does not apply to an offense committed against a

---

[7] Act of May 18, 2007, 80th Leg., R.S., ch. 593, §§ 1.17, 4.01(a), 2007 Tex. Gen. Laws 1120, 1127, 1148.

child fourteen years of age or older. *See* TEX. PENAL CODE ANN. § 21.02(b)(2) (West Supp. 2014). Appellant contends that the jury charge was erroneous because it potentially allowed jurors to convict him based on acts he committed prior to September 1, 2007, or after November 21, 2011.[8] Specifically, in the abstract portion of the charge, the jury was instructed as follows:

> You are instructed that the State is not bound by the specific date which the offense, if any, is alleged in the indictment to have been committed, but that a conviction may be had upon proof that the offense, if any, was committed at any time prior to the filing of the indictment which is within the period of limitations. There is no limitation period to the offense of continuous sexual abuse of a child.

This instruction is erroneous. *See, e.g., **Kuhn***, 393 S.W.3d at 524; ***Martin v. State***, 335 S.W.3d 867, 876 (Tex. App.–Austin 2011, pet. ref'd).

**Egregious Harm Analysis**

Because Appellant did not object to this instruction, we apply the "egregious harm" standard wherein reversal is required only if the charge error was "so egregious and created such harm that the defendant has not had a fair and impartial trial." ***Barrios v. State***, 283 S.W.3d 348, 350 (Tex. Crim. App. 2009); ***Almanza***, 686 S.W.2d at 171. In determining whether an appellant was deprived of a fair and impartial trial, we review the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel, and any other relevant information revealed by the record of the trial as a whole. *See **Taylor v. State***, 332 S.W.3d 483, 489 (Tex. Crim. App. 2011); ***Almanza***, 686 S.W.2d at 171. We will examine any part of the record that may illuminate the actual, not just theoretical, harm to the accused. *See **Taylor***, 332 S.W.3d at 489–90; ***Kuhn***, 393 S.W.3d at 525. Errors which result in egregious harm are those that affect the very basis of the case, deprive the defendant of a valuable right, vitally affect the defensive theory, or make a case for conviction clearly and significantly more persuasive. *See **Taylor***, 332 S.W.3d at 490. Egregious harm is a difficult standard to prove and such a determination must be done on a case-by-case basis. *See **Hutch v. State***, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996).

*The Court's Charge*

Based on our review of the entirety of the court's charge, we first note that the application paragraph, which immediately precedes the erroneous abstract paragraph, correctly instructed the jury that to convict Appellant, it must find beyond a reasonable doubt that he,

---

[8] F.G.'s fourteenth birthday was November 22, 2011.

during a period that was 30 or more days in duration, to-wit: from on or about September 1, 2007 through November 21, 2011, when the defendant was 17 years of age or older, commit two or more acts of sexual abuse against a child younger than 14 years of age.

As a result, the application paragraph mitigates against finding that any error in the abstract portion of the charge was egregious. *See Kuhn*, 393 S.W.3d at 529–30; *see also Medina v. State*, 7 S.W.3d 633, 640 (Tex. Crim. App. 1999). Moreover, similar to the charge in *Kuhn*, the first paragraph of the charge in the instant case correctly instructed the jury that the offense was alleged to have been committed from on or about September 1, 2007, through November 21, 2011. Lastly, the trial court included in the charge as Paragraph 11 the following limiting instruction in the precise language requested by Appellant:

> You are instructed that if there is any testimony before you in this case regarding the defendant's having committed offenses other than the offense alleged against him in the indictment in this case, you cannot consider said testimony for any purpose unless you find and believe beyond a reasonable doubt that the defendant committed such other offenses, if any were committed[,] and even then[,] you may only consider the same in determining the motive, opportunity, intent, preparation, plan, knowledge, identity of the defendant or absence of mistake or accident, if any, in connection with the offense, if any, alleged against him in the indictment in this case, and for no other purpose.

*See Kuhn*, 393 S.W.3d at 530 (considering trial court's use of detailed limiting instruction in jury charge concerning evidence of uncharged offenses or bad acts). Our reading of the charge as a whole weighs against a conclusion that Appellant was denied a fair and impartial trial. *See id.*

### *Argument of Counsel*

Based on our review of the arguments of counsel, we note that the prosecuting attorney emphasized the long term nature of Appellant's sexual abuse of F.G. However, during his closing argument, he sought briefly to denote the distinction between the charged acts and the acts occurring outside the time frame as follows:

> When did it begin? 2006. And, see, you're entitled to know about everything. You're entitled to know about when it started and when it ended, because it shows his intent, it shows his common scheme and plan, it shows his motivation. And, you know, motivation is real simple. For a child molester, for a filthy child molester, real simple: It's a kid, fair game, period. And it goes to establish, you know, his state of mind.
>
> So that's why you're entitled to know about the start date and the end date.

8

Previously, during voir dire, the prosecuting attorney gave the jury a more specific explanation of the requirements for convicting Appellant as charged. There, he informed the venire panel as follows:

> We have to prove that the defendant was older than 17. We have to prove that the victim was younger than 14. And we have to prove that it was [F.G.]
>
> And all that's required is that we prove two or more acts from a duration of 30 days or more, okay? If you have one act on day one and one act on day 31, done. Between September the 1st, 2007 through November the 21st, 2011. . . .
>
> . . . .
>
> I've just got to show you two acts between September the 1st 2007, and November the 21st, 2011, and they've got to be over 30 days apart.

Finally, during closing argument, the prosecuting attorney directed the jury's attention to the effective date of the statute, the correctly worded application paragraph, and the significance of the dates alleged in the indictment. He informed the jury that

> [w]e have to prove that the defendant, whom she identified, had sex with her, had continuous sex with her from September the 1st of 2007 through November the 21st, 2011.
>
> And let me tell you what the evidence shows. The evidence shows that he began preying on her innocence in 2006, okay? It never ended. It never ended until March of 2012. She told -- she gave her outcry on March the 5th of 2012. So what is important here -- when you look at September 1st of 2007, okay, and ending November the 21st of 2011, there are several elements that are met here. And why these dates are important is because of this: On September the 1st of 2007, that's when the statute was enacted. So all the acts that occurred -- every time -- twice a week, you do the math -- he committed the offense of aggravated sexual assault of a child from 2006 to 2012 hundreds and hundreds and hundreds of times on her.
>
> . . . .
>
> So he was sexually penetrating her with his penis, with his fingers, from 2006 through 2012.
>
> Now, why stop at November the 21st, 2011? Well, that's her -- the next day is her birthday. See, she turns 14 after 2011. So right here she's under the age of 14, and he's obviously over the age of 17.
>
> . . . .
>
> Did he rape her in Smith County, Texas? Absolutely.
>
> Is his name Cesar Gomez? Yes, it is.
>
> Did he rape her for a duration of 30 days or more between September the 1st, 2007 through November the 21st, 2011? Yes, he did.

9

Is he older than 17? Yes, he is.

Did he do it two or more times? Absolutely, period.

In **Kuhn**, the court considered a similar set of circumstances. *See id.* at 530–31. However, unlike the facts of the instant case, when the prosecuting attorney in **Kuhn** emphasized instances of sexual abuse that occurred prior to the enactment of the statute, he did not make any effort to denote for the jury the distinction between the charged acts and the acts occurring outside the time frame. *See id.* at 531. Nonetheless, the court concluded that this factor did not weigh heavily in favor of finding egregious harm because (1) there were multiple other instances where the prosecuting attorney informed the jury of the correct time frame it should consider, (2) the abuse that occurred prior to the effective date of the statute could permissibly be considered by the jury as circumstantial evidence of the abuse that occurred after the effective date of the statute, and (3) the jury charge contained a limiting instruction prohibiting the jury from considering the uncharged abuse for impermissible purposes. *See id.* Accordingly, we likewise conclude that the State's emphasis in its argument to the jury of the long term period of sexual abuse does not weigh heavily in favor of our concluding that Appellant was denied a fair and impartial trial.

*The State of the Evidence*

The jury heard substantial evidence that Appellant regularly sexually abused F.G. from 2006 until March 5, 2012. F.G. testified that Appellant sexually abused her at least twice per week during this time frame. F.G. did not provide specific date references in her testimony. But her statements were clear that Appellant regularly sexually abused her during this time frame. And although Appellant objected to testimony concerning his sexually abusing F.G. before the effective date of the statute, her testimony concerning whether he sexually abused her during the relevant period was not heavily contested.

Among Appellant's defensive theories at trial was his assertion that his sexual abuse of F.G. was limited to a handful of regrettable encounters as a result of his being intoxicated. Specifically, Appellant stated to investigators that this abuse was infrequent over a six month period in late 2011 through early 2012.[9] But similar to F.G.'s testimony, Appellant failed to provide any specific date references.

---

[9] Appellant made this statement during his interview on March 5, 2012.

10

The jury was entitled to disbelieve Appellant and rely on F.G.'s testimony alone to determine the time period of her abuse. *See* TEX. CODE CRIM. PROC. ANN. art. 38.07 (West Supp. 2014) (conviction under Penal Code, Chapter 21 is supportable on uncorroborated testimony of child victim alone); *Garcia v. State*, 563 S.W.2d 925, 928 (Tex. Crim. App. [Panel Op.] 1978); *Ozuna v. State*, 199 S.W.3d 601, 606 (Tex. App.–Corpus Christi 2006, no pet.). Or, it could have considered the fact that Appellant's purported timeline overlaps the relevant time period, albeit only by a couple of months. And although the jury could not lawfully convict Appellant for continuous sexual abuse based on his conduct prior to September 1, 2007, or after November 21, 2011, it could consider this conduct as circumstantial evidence of Appellant's conduct between September 1, 2007, and F.G.'s fourteenth birthday. *See Martin*, 335 S.W.3d at 876.

Based on our review of the record, we cannot conclude that the jury was unable to infer that at least two acts of abuse occurred between September 1, 2007, and November 21, 2011, simply because the State did not elicit more detailed testimony from the child victim. *See Kuhn*, 393 S.W.3d at 529. Therefore, we conclude that the state of the evidence in the instant case weighs heavily against a conclusion that Appellant was denied a fair and impartial trial. *See id.*

*Summation*

Having considered the entirety of the jury charge, the argument of counsel, and the state of the evidence, we conclude that these factors, considered together, do not weigh in favor of a conclusion that Appellant was denied a fair and impartial trial. Accordingly, we hold that Appellant did not suffer egregious harm.

Appellant's fifth issue is overruled.

INDICTMENT

In his sixth, seventh, and eighth issues, Appellant argues that the trial court committed various errors stemming from its attempt to amend the indictment. Specifically, Appellant contends that (1) the trial court erred in proceeding to trial on an indictment that did not allege continuous abuse, (2) erred in submitting continuous abuse to the jury when it was not alleged in the indictment, and (3) erred in failing to construe the verdict as a conviction for aggravated sexual assault of a child.

## Governing Law

A criminal defendant is guaranteed the right to know the allegations against him contained in an indictment returned by a grand jury and to have a copy of the indictment. TEX. CONST. art. I, § 10. An indictment vests the trial court with jurisdiction and provides the defendant with notice of the offense with which he is charged so that he may prepare, in advance of trial, an informed and effective defense. *Riney v. State*, 28 S.W.3d 561, 565 (Tex. Crim. App. 2000); *Westmoreland v. State*, 174 S.W.3d 282, 286 (Tex. App.–Tyler 2005, pet. ref'd).

Texas Code of Criminal Procedure, Article 28.10 prescribes the following procedure for amending an indictment:

> (a) After notice to the defendant, a matter of form or substance in an indictment or information may be amended at any time before the date of the trial on the merits commences. On the request of the defendant, the court shall allow the defendant not less than 10 days, or a shorter period if requested by the defendant, to respond to the amended indictment or information.
>
> . . . .
>
> (c) An indictment or information may not be amended over the defendant's objection as to form or substance if the amended indictment or information charges the defendant with an additional or different offense or if the substantial rights of the defendant are prejudiced.

TEX. CODE CRIM. PROC. ANN. art. 28.10(a), (c) (West 2006). All amendments of an indictment or information must be made with leave of the court and under its direction. *Id.* art. 28.11.

Prior to 2000, the recognized procedure for amending an indictment required the state to either return to the grand jury to obtain a subsequent indictment or request an amendment of the indictment through a motion to the court. *Westmoreland*, 174 S.W.3d at 286. The motion to amend the indictment, taken together with the trial court's granting of the motion to amend and signing the order on the amendment, comprised the authorization for the eventual amendment of the charging instrument pursuant to Article 28.10. *See Ward v. State*, 829 S.W.2d 787, 793 (Tex. Crim. App. 1992). The *Ward* court noted that "amend" means an actual alteration of the charging instrument itself. *Id.* The amendment, then, was the actual alteration of the charging instrument. *Id.* Consequently, where the State moved to amend the indictment and the trial court granted the motion, the court physically interlineated the changes on the original indictment. *See id.* at 793–94.

In 2000, the court of criminal appeals addressed whether it was necessary to physically interlineate the changes in order to amend an indictment. *See Riney*, 28 S.W.3d at 564. In *Riney*,

12

the court overruled *Ward* and the cases relying on it, to the extent they required physical interlineation of the original indictment as the only means to amend an indictment. *See id.* at 566. The court emphasized that the amended indictment was where the defendant could find notice of the specific charges against him in order to prepare his defense. *Id.* Therefore, the court held, the "physical interlineation of the original indictment is an acceptable, but not the exclusive means," of amending an indictment. *Id.* at 565–66.

**Amendment of the Indictment**

In the case at hand, the original indictment alleged that the offense commenced on or about August 15, 2007. On November 2, 2012, the State filed a motion to amend the indictment to change the beginning date of the alleged offense to September 1, 2007. The trial court orally granted the State's motion at a pretrial hearing on February 1, 2013. Appellant did not object to the proposed amendment during the hearing. The trial court signed a written order granting the motion later that day. On Saturday, February 2, 2013, the trial court interlineated the indictment to change the beginning date of the offense to September 1, 2007. The interlineated indictment was forwarded to this court as part of a supplemental clerk's record. *See, e.g., Bolton v. State*, No. 06-11-00268-CR, 2012 WL 5507404, at *5 n.1 (Tex. App.–Texarkana 2012, Nov. 14, 2012, pet. ref'd) (mem. op., not designated for publication). Further, the prosecuting attorney read the amended indictment into the record before the jury at the outset of trial, and Appellant entered his plea of "not guilty" to the amended indictment without making an objection. *See, e.g.*, *Barrera v. State*, 321 S.W.3d 137, 145 (Tex. App.–San Antonio 2010, pet. ref'd). Further still, the court's charge tracked the amended indictment. *See id.* And although the jury stated in its verdict that it found Appellant "guilty" as charged "under the indictment" rather than "under the [*amended*] indictment," it is reasonable to conclude that the jury was acting in accordance with the description of the offense as charged in the amended indictment based on the introductory paragraph in the charge setting forth the indictment allegations consistent with the amended indictment. *Cf. Murphy v. State*, 44 S.W.3d 656, 665 (Tex. App.–Austin 2001, no pet.) (purpose of jury charge is to inform the jury of applicable law and guide it in application of law to case; absent evidence to contrary, we presume jury followed law provided by charge). Moreover, Appellant never filed a motion to quash the amended indictment[10] and did not object to proceeding

---

[10] Appellant filed a motion to quash the original indictment at some point in 2012. That motion is included in a supplemental clerk's record. The basis of this motion is unrelated to the alleged date on which the offense

13

to trial based on the amended indictment. *See, e.g.*, ***Barrera***, 321 S.W.3d at 145. Finally, it is apparent that Appellant had actual notice of the proposed amendment to the indictment well in advance of trial, never objected to the amendment, and was tried and convicted on the amended indictment. *See **id.***

Based on the foregoing, we conclude that the record supports that an effective amendment was made to the indictment to allege continuous sexual abuse. *See **id.*** Accordingly, we hold that the trial court did not err in proceeding to trial on this amended indictment, in submitting continuous sexual abuse to the jury on that basis, or in rendering the verdict as a conviction based on the allegations in the amended indictment. Appellant's sixth, seventh, and eighth issues are overruled.

<u>**JUDGMENT NUNC PRO TUNC**</u>

In his ninth issue, Appellant argues that the trial court's judgment nunc pro tunc is void because he had already filed his notice of appeal. In his tenth issue, Appellant argues that the judgment nunc pro tunc improperly corrected a judicial error. In his eleventh issue, Appellant contends that the trial court violated his right to due process by changing the date of the offense in its judgment nunc pro tunc without Appellant's being present.

The trial court signed its judgment on February 6, 2013. That judgment set forth that the offense commenced on August 15, 2007. On February 26, 2013, the trial court entered a judgment nunc pro tunc, without Appellant's being present, in which it revised the date of the offense to September 1, 2007.

**Governing Law**

The Latin phrase "nunc pro tunc" means "now for then" and describes the inherent power a court possesses to make its records speak the truth. ***Smith v. State***, 15 S.W.3d 294, 298 (Tex. App.–Dallas 2000, no pet.). In other words, use of a judgment nunc pro tunc permits the court to correct now what the record reflects had already occurred at a time in the past. *See **Silva v. State***, 989 S.W.2d 64, 66 (Tex. App.–San Antonio 1998, pet. ref'd); ***State v. Garza***, 824 S.W.2d 324, 325 (Tex. App.–San Antonio 1992, pet. ref'd).

The purpose of a nunc pro tunc order is to correctly reflect in the records of the trial court the judgment it actually made, but which for some reason was not entered of record at the proper

commenced. Rather, it is based on Appellant's contentions that evidence relied upon by the State supports that any offense committed by Appellant occurred after F.G.'s fourteenth birthday.

time.  *Smith*, 15 S.W.3d at 298; *Creeks v. State*, 807 S.W.2d 853, 854 (Tex. App.–Dallas 1991, pet. ref'd), *overruled on other grounds*, *Asberry v. State*, 813 S.W.2d 526, 531 (Tex. App.–Dallas 1991, pet. ref'd).  Therefore, before a judgment nunc pro tunc may be entered, there must be proof the proposed judgment was actually rendered or pronounced at an earlier time.  *See Collins v. State*, 240 S.W.3d 925, 928 (Tex. Crim. App. 2007); *Jones v. State*, 795 S.W.2d 199, 201 (Tex. Crim. App. 1990); *Wilson v. State*, 677 S.W.2d 518, 521 (Tex. Crim. App. 1984); *Dickson v. State*, 988 S.W.2d 261, 263 (Tex. App.–Texarkana 1998, pet. ref'd); *Garza*, 824 S.W.2d at 325.  A judgment nunc pro tunc is improper when it has the effect of making a new or independent order. *Smith,* 15 S.W.3d at 299 (citing *Ex parte Dickerson*, 702 S.W.2d 657, 658 (Tex. Crim. App. 1986)).  The nunc pro tunc entry may be made to correct a judgment to properly reflect the actual order but may not be used to modify or add provisions to an order previously entered.  *Smith*, 15 S.W.3d at 299.  A correction can be made to reflect what actually happened at trial by entry of a nunc pro tunc judgment, "but correction can be only as to what was done and not as to what should have been done." *Ex parte Dopps*, 723 S.W.2d 669, 671 (Tex. Crim. App. 1986); *Chaney v. State*, 494 S.W.2d 813, 814 n.1 (Tex. Crim. App. 1973).

A judgment nunc pro tunc may correct only clerical errors in a judgment, not judicial omissions or errors.  *State v. Gobel*, 988 S.W.2d 852, 853 (Tex. App.–Tyler 1999, no pet.); *Jiminez v. State*, 953 S.W.2d 293, 295 (Tex. App.–Austin 1997, pet. ref'd).  A clerical error is defined as one that does not result from judicial reasoning or determination.  *See Collins*, 240 S.W.3d at 928; *State v. Bates*, 889 S.W.2d 306, 309 (Tex. Crim. App. 1994).  Whether the error is judicial or clerical depends on the nature of the error, not on who made the error.  *Jiminez*, 953 S.W.2d at 295; *Curry v. State*, 720 S.W.2d 261, 262 (Tex. App.–Austin 1986, pet. ref'd).  Thus, the correction of a clerical error is only a process to insure that the record truthfully reflects what actually occurred. This "correction process" does not allow for or permit readjudication or the reopening of a controversy.  *Smith*, 15 S.W.3d at 299. The determination of whether an error is clerical or judicial in nature is a question of law.  As such, the trial court's findings and conclusions are not binding on an appellate court. *Id.*

**Propriety of Judgment Nunc Pro Tunc**

In the instant case, in its judgment nunc pro tunc, the trial court changed the date of the offense from August 15, 2007, to September 1, 2007.  By changing the date of the offense, the trial court's judgment correctly reflected in the records of the trial court the judgment it actually

15

rendered. As set forth previously, the amended indictment set forth the commencement date for the charged crime as September 1, 2007. This commencement date for the offense was read to Appellant before the jury at the outset of trial and is set forth in the court's charge. The jury found Appellant "guilty" of continuous sexual abuse of a child under fourteen years of age based on this amended indictment, and the trial court pronounced Appellant's "guilt" and his sentence for this offense on the record. Accordingly, we hold that the trial court's judgment nunc pro tunc served to correct a clerical error. Appellant's tenth issue is overruled.

## Timeliness of Judgment Nunc Pro Tunc

Appellant filed his notice of appeal on February 6, 2013. The trial court entered its judgment nunc pro tunc on February 26, 2013. The entry of a nunc pro tunc order prior to the date that the appellate record is filed does not present error. *See Ware v. State*, 62 S.W.3d 344, 353–54 (Tex. App.–Fort Worth 2001, pet. ref'd); *see also Perkins v. State*, 505 S.W.2d 563, 564 (Tex. Crim. App. 1974); *cf.* Tex. R. App. P. 25.2(g) (in a criminal case, once record has been filed in appellate court, all further proceedings in trial court—except as provided otherwise by law or these rules—will be suspended until trial court receives appellate court mandate).

Here, the trial court's judgment nunc pro tunc was entered prior to the filing of the appellate record. Accordingly, we hold that it was not untimely. Appellant's ninth issue is overruled.

## Ex Parte Change to Judgment Nunc Pro Tunc

The purpose of a nunc pro tunc order is to have the court records correctly reflect a judgment actually rendered by the trial court. *Lancaster v. State*, 324 S.W.3d 217, 228 (Tex. App.–Waco 2010, pet. ref'd); *see Jones v. State*, 795 S.W.2d 199, 202 (Tex. Crim. App. 1990); *McGinnis v. State*, 664 S.W.2d 769, 770 (Tex. App.–Amarillo 1983, pet. ref'd). The court of criminal appeals has said that before any unfavorable nunc pro tunc orders are entered, the person convicted should be given an opportunity to be present for the hearing and represented by counsel in order to accord him due process of law. *See Shaw v. State*, 539 S.W.2d 887, 890 (Tex. Crim. App. 1976). But in a subsequent opinion, the court has stated that if the trial court properly changed its order, remanding for a hearing would be a "useless task." *Homan v. Hughes*, 708 S.W.2d 449, 454–55 (Tex. Crim. App. 1986); *Lancaster*, 324 S.W.3d at 218.

In the instant case, assuming arguendo that the clerical correction made by the trial court in its judgment nunc pro tunc was "unfavorable" to Appellant, we hold that remanding the matter

for a hearing regarding this proper change to the judgment would be a "useless task." *See Homan*, 708 S.W.2d at 454–55 (Tex. Crim. App. 1986); *Lancaster*, 324 S.W.3d at 218; *see also Popp v. State*, No. 10-03-00263-CR, 2004 WL 2306635, at *1–2 (Tex. App.–Waco Oct. 13, 2004, pet. ref'd (mem. op., not designated for publication). Appellant's eleventh issue is overruled.

## *MIRANDA* WARNINGS

In his twelfth issue, Appellant argues that the trial court erred in finding at the hearing on his motion to suppress that the interrogator complied with the oral confession statute when he told Appellant that his right to appointed counsel did not become effective until after he was interviewed.

### Standard of Review

We review a trial court's ruling on a motion to suppress under an abuse of discretion standard. *Elizondo v. State*, 382 S.W.3d 389, 393 (Tex. Crim. App. 2012). When the trial court's findings of fact are based on an evaluation of credibility and demeanor, we afford almost total deference to the trial court's determination of facts that are supported by the record. *Id.* We review de novo the trial court's application of the law to the facts and uphold the trial court's ruling if it is supported by the record and is correct under any theory of law applicable to the case. *Id.* at 393–94 (citing *State v. Ross*, 32 S.W.3d 853, 855–56 (Tex. Crim. App. 2000)).

### Preservation of Error

The State argues that Appellant failed to raise this specific contention in his written motion to suppress or during his argument to the trial court on his motion to suppress. Where a motion to suppress makes broad arguments under the confession statute[11] and otherwise fails to bring the specific matter to the trial court's attention that an appellant later seeks to raise on appeal, error is not preserved. *See Resendez v. State*, 306 S.W.3d 308, 313 (Tex. Crim. App. 2009). Moreover, when considering argument on a motion to suppress, "a complaint that could, in isolation, be read to express more than one legal argument will generally not preserve all potentially relevant arguments for appeal." *Id.* Only when there are clear contextual clues indicating that the party was, in fact, making a particular argument will that argument be preserved. *Id.*

In the instant case, Appellant argued in his motion to suppress, in pertinent part, as follows:

---

[11] *See* TEX. CODE CRIM. PROC. ANN. art. 38.22 (West Supp. 2014).

17

2. The actions of the Tyler Police Department violated the constitutional and statutory rights of the Defendant under the Fourth, Fifth, Sixth[,] and Fourteenth Amendments to the United States Constitution, Article I, Section 9 of the Texas Constitution, and under Article 38.23 of the Texas Code of Criminal Procedure.

3. Any statements obtained from Cesar Gomez were obtained in violation of Article 38.22 of the Texas Code of Criminal Procedure and in violation of the rights of Cesar Gomez pursuant to the Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution [and] Article I, Sections, 9, 10[,] and 19 of the Constitution of the State of Texas.

At trial, Appellant urged his motion to suppress and stated the basis of his argument as follows:

Judge, just so we can expedite this, what I'm going to do is urge the motion. I'm going to tell the Court that I believe that there are indications on what the State's going to admit into evidence that Mr. Gomez had -- was asked about drinking, he indicated he had been drinking; he'd been drinking a lot. And I believe that -- and I'm going to urge the motion based on him not being aware of what he was doing when he waived his Miranda rights.

Appellant's written motion to suppress is insufficient in itself to preserve for appeal the specific argument that Roberts told Appellant that his right to appointed counsel did not become effective until after he was interviewed. *See id.* Article 38.22 contains a number of subsections that could have been applicable to Appellant's videotaped statement. *See id.* And Appellant's statements at the hearing on the motion to suppress did nothing to bring the trial court's attention to the issue he now seeks to raise. Therefore, we hold that Appellant failed to preserve error because his argument to the trial court does not comport with the argument he now makes on appeal. *See id.*; ***Rothstein v. State***, 267 S.W.3d 366, 373 (Tex. App.–Houston [14th Dist.] 2008, pet. ref'd) (defendant's appellate contention must comport with specific assertions made in motion to suppress; motion to suppress stating one legal theory may not be used to support different legal theory on appeal); *see also* TEX. R. APP. P. 33.1.

### *Miranda* **Warnings not Vitiated by Subsequent Erroneous Statement**

Even if we assume arguendo that Appellant preserved the issue he now seeks to raise, the outcome would not change. At the interview, Tyler Police Officer Edgar Zapata, a translator, gave Appellant his ***Miranda*** warnings[12] in Spanish. At the hearing on Appellant's motion to suppress, Zapata testified that he gave Appellant his ***Miranda*** warnings and Appellant understood what was said to him. Zapata further testified that Appellant waived his ***Miranda*** rights, and

---

[12] *See **Miranda v. Arizona***, 384 U.S.436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

18

agreed to be interviewed. Zapata stated that Appellant understood what he was doing when he waived his *Miranda* rights.

The basis of Appellant's argument concerns Roberts's statement after Appellant had been read his *Miranda* rights. Specifically, Roberts asked Zapata to tell Appellant that "a lawyer can be appointed for him by the court at a later time." However, in the next breath, Roberts stated, "If he wants to continue speaking to us without an attorney—and it's entirely his choice—he can stop at any time he becomes uncomfortable." Roberts next asked if the translator was confident Appellant understood his rights and was "okay continuing without an attorney understanding that he can stop at any time." The translator relayed the message to Appellant, who responded, "Yes, why not?"

The addition of an erroneous statement does not vitiate an otherwise correct *Miranda* warning. *United States v. Harrell*, 894 F.2d 120, 125 (5th Cir. 1990). The test of whether *Miranda* has been satisfied is whether the warning reasonably conveys to a suspect his rights. *Id.* (citing *Duckworth v. Eagan*, 492 U.S. 195, 202, 109 S. Ct. 2875, 2880, 106 L. Ed. 2d 166 (1989)). In *Duckworth*, the Court scrutinized a warning that met *Miranda's* basic formula, but in the context of an additional statement that "[w]e have no way of giving you a lawyer, but one will be appointed for you, if you wish, if and when you go to court." *Id.*, 492 U.S. at 197–98, 109 S. Ct. at 2877. The Court held that the superfluous language did not render an otherwise valid warning defective. *Id.*, 492 U.S. at 201, 109 S. Ct. at 2879. That is to say, there is not one singularly correct form of *Miranda* warnings. *Harrell*, 894 F.2d at 125.

Here, the record indicates that Zapata reasonably conveyed the *Miranda* warnings to Appellant. Even if we overlook the fact that Roberts immediately clarified his erroneous statement, the addition of this erroneous statement does not require suppression of Appellant's statements given in the interview. *Id.*

Appellant's twelfth issue is overruled.

## ISSUES THIRTEEN AND FOURTEEN WITHDRAWN AS MOOT

In his thirteenth issue, Appellant argues that he is entitled to a new trial if the video of his confession remains unviewable. In his fourteenth issue, Appellant argues that he is entitled to a new trial if the file marked copy of his motion to quash cannot be included in the record.

19

In his reply brief, Appellant elected to withdraw his thirteenth issue if the video of his interview with investigators submitted by the State as part of a supplemental clerk's record was viewable in addition to the audio. After installing a video codec supplied by the State in conjunction with this video evidence, we were able to view the video along with the audio of Appellant's interview.

Additionally, in his reply brief, Appellant agrees to withdraw his fourteenth issue because a stipulated copy of his Motion to Quash and Exception to Substance of Indictment was included in a supplemental clerk's record.

Because Appellant has withdrawn these issues, we do not address them. *See* TEX. R. APP. P. 47.1.

## DISPOSITION

Having overruled Appellant's issues one through twelve, we ***affirm*** the trial court's judgment.

**BRIAN HOYLE**
Justice

Opinion delivered January 21, 2015.
*Panel consisted Worthen, C.J., and Hoyle, J.*

(PUBLISH)

20



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

### JANUARY 21, 2015

### NO. 12-13-00050-CR

**CESAR GOMEZ,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 241st District Court

of Smith County, Texas (Tr.Ct.No. 241-0529-12)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

Brian Hoyle, Justice.
*Panel consisted of Worthen, C.J., and Hoyle, J.*