

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

## 06-20-00013-CR

_____

ANTHONY ELISHA KELLY, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 217th District Court
Angelina County, Texas
Trial Court No. 2019-0314

Before Morriss, C.J., Burgess and Stevens, JJ.
Memorandum Opinion by Justice Stevens

## MEMORANDUM OPINION

An Angelina County jury convicted Anthony Elisha Kelly of aggravated assault with a deadly weapon and assessed a sentence of fifty years' imprisonment. On appeal, Kelly argues that he was egregiously harmed by jury charge error.[1] Because we conclude that Kelly did not suffer egregious harm, we affirm the trial court's judgment.

## I. Standard of Review

"We review claims of jury charge error under the two[-]pronged test set out in *Almanza v. State*." *Gomez v. State*, 459 S.W.3d 651, 660 (Tex. App.—Tyler 2015, pet. ref'd) (citing *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g); *Kuhn v. State*, 393 S.W.3d 519, 524 (Tex. App.—Austin 2013, pet. ref'd); *Swearingen v. State*, 270 S.W.3d 804, 808 (Tex. App.—Austin 2008, pet. ref'd)). "We first determine whether error exists." *Id.* (citing *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005); *Swearingen*, 270 S.W.3d at 808). "If error exists, we next evaluate the harm caused by the error." *Id.* (citing *Ngo*, 175 S.W.3d at 743; *Swearingen*, 270 S.W.3d at 808). "The degree of harm required for reversal depends on whether that error was preserved in the trial court." *Id.* (citing *Kuhn*, 393 S.W.3d at 524). "[W]here no objection is made to charge error, reversal is required only if the error resulted in 'egregious harm.'" *Id.* (citing *Neal v. State*, 256 S.W.3d 264, 278 (Tex. Crim. App. 2008)).

---

[1]Originally appealed to the Twelfth Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001. We follow the precedent of the Twelfth Court of Appeals in deciding this case. *See* TEX. R. APP. P. 41.3.

## II.     The Jury Charge Was Erroneous

The State's indictment alleged that Kelly "intentionally, knowingly, and recklessly cause[d] serious bodily injury to Ladondra Murphy . . . by shooting [her] with a firearm, . . . a deadly weapon." The State also alleged that Kelly and Murphy had a dating relationship. Under Section 22.01(a)(1) of the Texas Penal Code, a person commits assault if they "intentionally, knowingly, or recklessly cause[] bodily injury to another." TEX. PENAL CODE ANN. § 22.01(a)(1) (Supp.). Under Section 22.02, a person commits aggravated assault "if the person commits assault as defined in [Section] 22.01 and the person: (1) causes serious bodily injury to another, . . . ; or (2) uses or exhibits a deadly weapon during the commission of the assault." TEX. PENAL CODE ANN. § 22.02(a). Aggravated assault is elevated from a second-degree offense to a first-degree felony if "the actor uses a deadly weapon during the commission of the assault and causes serious bodily injury to a person whose relationship to or association with the defendant" is described by the Texas Family Code as a dating relationship. TEX. PENAL CODE ANN. § 22.02(b)(1).

The abstract portion of the trial court's jury charge correctly stated:

> Our law provides that a person commits the offense of Aggravated Assault if the person commits assault and the person causes serious bodily injury to another or uses or exhibits a deadly weapon during the commission of the assault.

> Our law provides that a person commits the offense of Assault if the person intentionally, knowingly or recklessly causes bodily injury to another.

Even so, Kelly argues that the trial court's definitions of the required mens rea in the abstract portions of the jury charge were erroneous because (1) aggravated assault is a result-oriented crime, (2) the charge contained inapplicable language about the nature of the conduct when

3

defining the culpable mental states, and (3) the charge omitted result-oriented language when defining the knowing state of mind. This portion of the trial court's charge read:

> A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result.

> A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist.

> A person acts recklessly, or is reckless, with respect to circumstances surrounding his conduct or the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint.

"When 'specific acts are criminalized because of their very nature, a culpable mental state must apply to committing the act itself.'" *Price v. State*, 457 S.W.3d 437, 441 (Tex. Crim. App. 2015) (quoting *McQueen v. State*, 781 S.W.2d 600, 603 (Tex. Crim. App. 1989)). "On the other hand, unspecified conduct that is criminalized because of its result requires culpability as to that result." *Id.* (quoting *McQueen*, 781 S.W.2d at 603). "A trial court errs when it fails to limit the language in regard to the applicable culpable mental states to the appropriate conduct element." *Id.* (citing *Cook v. State*, 884 S.W.2d 485, 491 (Tex. Crim. App. 1994) ("Intentional murder . . . is a 'result of conduct' offense, therefore, the trial judge erred in not limiting the culpable mental states to the result of appellant's conduct.")). "The gravamen of assault with bodily injury is injury, a result of conduct." *Id.* at 442; *see Landrian v. State*, 268 S.W.3d 532, 540 (Tex. Crim. App. 2008). For that reason, the trial court's inclusion of the nature of conduct

4

language and the omission of the result of conduct language from the definition of "knowingly" was incorrect, and the State concedes the error.

Under step two of the *Almanza* analysis, we move to the issue of harm.

**III.    Kelly Was Not Egregiously Harmed by the Jury Charge**

Because Kelly failed to object to the trial court's charge, "we apply the 'egregious harm' standard wherein reversal is required only if the charge error was 'so egregious and created such harm that the defendant has not had a fair and impartial trial.'" *Gomez*, 459 S.W.3d at 660 (quoting *Barrios v. State*, 283 S.W.3d 348, 350 (Tex. Crim. App. 2009); *Almanza*, 686 S.W.2d at 171). In determining whether Kelly "was deprived of a fair and impartial trial, we review the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel, and any other relevant information revealed by the record of the trial as a whole." *Id.* at 660–61 (citing *Taylor v. State*, 332 S.W.3d 483, 489 (Tex. Crim. App. 2011); *Almanza*, 686 S.W.2d at 171). "We will examine any part of the record that may illuminate the actual, not just theoretical, harm to the accused." *Id.* at 661 (citing *Taylor*, 332 S.W.3d at 489–90; *Kuhn*, 393 S.W.3d at 525). "Errors which result in egregious harm are those that affect the very basis of the case, deprive the defendant of a valuable right, vitally affect the defensive theory, or make a case for conviction clearly and significantly more persuasive." *Id.* (citing *Taylor*, 332 S.W.3d at 490). "Egregious harm is a difficult standard to prove and such a determination must be done on a case-by-case basis." *Id.* (citing *Hutch v. State*, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996)).

Before examining the trial court's charge in this case, we review the Texas Court of Criminal Appeals's opinion in *Medina v. State*, 7 S.W.3d 633 (Tex. Crim. App. 1999). There, the court found erroneous the trial court's omission of "result of conduct" language from a definition of "knowingly" in a capital murder case because capital murder is a "result of conduct" offense. *Id.* at 639. Even so, the court found that the defendant was not egregiously harmed because the application paragraph "instructed the jury that they must believe beyond a reasonable doubt that [defendant] 'intentionally or knowingly caused the death,' before they could find him guilty." *Id.* at 640. "Where the application paragraph correctly instructs the jury, an error in the abstract instruction is not egregious." *Id.*; *see Gomez*, 459 S.W.3d at 661. The trial court's application paragraph here stated,

> Now, if you find from the evidence beyond a reasonable doubt that on or about the 1st day of March, 2019, in Angelina County, Texas, the defendant, ANTHONY ELISHA KELLY, intentionally, knowingly, and recklessly caused serious bodily injury to Ladondra Murphy by shooting the said Ladondra Murphy with a firearm, and the defendant did then and there use or exhibit a deadly weapon, to-wit: a firearm, during the commission of the assault, and the said Ladondra Murphy was a person whose relationship to or association with the defendant is described by Section 71.0021(b), 71.003, or 71.005, Family Code, then you will find the defendant guilty of Aggravated Assault as charged in the indictment, and so say by your verdict.

By the application paragraph, the jury was instructed that it could convict Kelly only if it found, beyond a reasonable doubt, that Kelly "intentionally, knowingly, [or] recklessly caused serious bodily injury." The mental states in the application paragraph directly modify the result of Kelly's conduct, which is causing bodily injury. *Patrick v. State*, 906 S.W.2d 481, 493 (Tex. Crim. App. 1995). Because the application paragraph required the jury to find that Kelly had the

intent to cause serious bodily injury, we find it mitigated any harm from the abstract instructions. *See Medina*, 7 S.W.3d at 640; *Patrick*, 906 S.W.2d at 493; *Gomez*, 459 S.W.3d at 661.

Also, the trial court submitted the issue of self-defense, which "is a confession-and-avoidance defense requiring the defendant to admit to his otherwise illegal conduct." *Jordan v. State*, 593 S.W.3d 340, 343 (Tex. Crim. App. 2020) (citing *Juarez v. State*, 308 S.W.3d 398, 404 (Tex. Crim. App. 2010)). A defendant "cannot both invoke self-defense and flatly deny the charged conduct." *Id*. "[I]f the defensive evidence in support of a necessity or a self-defense instruction merely 'negates the necessary culpable mental state, it will not suffice to entitle the defendant to a defensive instruction.'" *Williams v. State*, 314 S.W.3d 45, 50 (Tex. App.—Tyler 2010, pet. ref'd) (quoting *Shaw v. State*, 243 S.W.3d 647, 659 (Tex. Crim. App. 2007)). By placing the issue of self-defense before the jury, Kelly admitted that either (1) it was his conscious objective or desire to cause serious bodily injury to Murphy, (2) he was aware that his conduct was reasonably certain to cause seriously bodily injury to Murphy, or (3) he was aware of but consciously disregarded a substantial and unjustifiable risk that Murphy would suffer serious bodily injury. *See* TEX. PENAL CODE ANN. § 6.03. After reviewing the entire jury charge, we conclude it weighs against a finding of egregious harm.

This conclusion is bolstered by the facts of this case. At trial, it was undisputed that an altercation between Kelly and Murphy resulted in Murphy's serious bodily injury from a gunshot wound. Murphy testified that Kelly became enraged during an argument and started choking her. She testified that Kelly retrieved a gun from his closet, started firing, and shot her four

7

times in the chest, legs, and arm. As a result, the state of the evidence of Kelly's guilt was not weak.

Kelly raised the issue of self-defense and claimed that Murphy was the one that retrieved the gun. Providing another version of events, Kelly testified, "I reached to grab the gun and we started tussling and . . . our hands were both engaged on the trigger, and she just would never stop. She jerked me like four or five times. While we were sitting there wrestling with the gun, the gun was going off." Kelly said he was trying to protect himself and did not know if he had shot Murphy. In rejecting Kelly's self-defense argument, the jury determined that Murphy's version of events, in which Kelly retrieved a gun from his closet, shot her, and caused her serious bodily injury, was correct. Thus, the jury found that Kelly intentionally, knowingly, or recklessly caused Murphy serious bodily injury.

Next, we find nothing in the arguments of counsel that weighs in favor of finding egregious harm. During closing, the State merely argued, "We have to prove that he acted intentionally or knowingly. This was not an accident. This gun did not accidentally go off and hit her four times. It's not an accident, this was an intentional and knowing act, an intentional and knowing assault."

In sum, after considering the entirety of the jury charge, the arguments of counsel, the state of the evidence, and Kelly's submission of self-defense, we conclude that these factors, considered together, do not weigh in favor of a conclusion that Kelly was denied a fair and impartial trial. As a result, we find that Kelly did not suffer egregious harm and overrule his jury charge complaints.

## IV.     Conclusion

We affirm the trial court's judgment.


                                        Scott E. Stevens
                                        Justice

Date Submitted:      August 31, 2020
Date Decided:        September 18, 2020

Do Not Publish